## 9672

## CHINA v. SEABOARD AIR LINE RY.

### (92 S. E. 335.)

1. MALICIOUS PROSECUTION — ELEMENTS. — Plaintiff, in an action for malicious prosecution to recover, must show that there was no probable ground for the prosecution, that the defendant was prompted by express malice, and that such prosecution ended before beginning of the civil action.

2. MALICIOUS PROSECUTION—INTENT—QUESTION FOR JURY.—Since larceny involves generally a secret intent of the defendant and generally rests in circumstances, the inference of intent to be drawn therefrom is generally a question of fact for the jury.

3. MALICIOUS PROSECUTION — INTENT — QUESTION FOR JURY.—The mere fact that a railroad ticket agent used for his own purposes $55 of the railroad's money did not warrant the Judge, upon that showing alone, to infer as a matter of law that he had the secret intent to steal, especially when at the time of the misappropriation the company owed him for wages practically the amount appropriated.

4. MALICIOUS PROSECUTION — PROBABLE GUILT — WEIGHT OF CIRCUMSTANCES.—Circumstances tending to show probable guilt need not measure up to those which prove guilt; the difference being not in the character of the circumstances, but in their weight.

5. LARCENY—MISAPPROPRIATION OF TRUST FUNDS—EFFECT.—Mere use of trust funds for the individual purposes of the trustee does not become a crime until the trustee forms and executes the intent to steal the funds.

6. MALICIOUS PROSECUTION—"PROBABLE CAUSE."—"Probable cause" means the existence of such facts and circumstances as would excite the belief in a reasonable mind that the person charged was guilty of crime for which he was prosecuted.

7. MALICIOUS PROSECUTION—PROBABLE CAUSE—EVIDENCE—SUFFICENCY.— Where a railroad auditor had found shortages in a ticket agent's account, but had passed them for two months, and they had been made up, and he thereafter found a shortage in another month, it was a jury question whether the circumstances of such shortage and delayed entry warranted him in assuming a criminal intent.

8. MALICIOUS PROSECUTION — MALICE — WANT OF PROBABLE CAUSE. — Malice in a prosecution may be inferred from want of probable cause; the inference being rebuttable.

9. MALICIOUS PROSECUTION — PROBABLE CAUSE — EFFECT OF CONSULTING COUNSEL.—Consultation of counsel before instituting a prosecution is not conclusive of good faith in beginning the prosecution.

10. MALICIOUS PROSECUTION — PROBABLE CAUSE — JUSTIFICATION. — That a railway auditor passed over certain shortages for previous months before resorting to criminal prosecution for a shortage for the cur-

rent month was not conclusive of his good faith in beginning such prosecution, but merely presented the question for the jury whether he acted in good faith.

Before MAULDIN, J., Camden, March, 1916. Affirmed.

Action by C. L. China against Seaboard Air Line Railway. From judgment for plaintiff, defendant appeals.

*Messrs. Edward McIver* and *Stevenson & Prince,* for appellant, cite: *As to burden of proving malice:* 16 S. C. 393; 70 S. C. 429; 5 S. C. 476; 20 S. C. L. 499. *Larceny after breach of trust:* Crim. Code, sec. 188. *Consultation with counsel as negativing malice:* 19 A. & E. Enc. of L. 650, 657, 658, 659. *Presumption and probable cause:* 9 R. C. L. 1279, sec. 20; 31 S. C. 343; 104 S. C. 149; 57 S. C. 228.

*Messrs. W. B. de Loach* and *Kirkland & Kirkland* cite: *As to fraudulent breach of trust:* 98 S. C. 422; 6 A. & E. Ann. Cas. 344. *Presumption of malice from absence of probable cause:* 57 S. C. 524; 16 S. C. 387; 10 S. C. L. 278. *Legal advice only a circumstance:* 57 S. C. 213; 16 S. C. 387. *Waiver of preliminary raises no presumption:* 36 S. C. 368. *No bill:* 21 S. E. 729. *Refusal of nonsuit:* 104 S. C. 149.

April 24, 1917.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action in tort for malicious prosecution; that is to say: That the railway company had aforetime indicted plaintiff for breach of trust with fraudulent intent; that the circumstances of the case did not render the charge probably true; that the railroad company was instigated by express malice towards China to make the charge; that the grand jury

returned "no bill" on the charge. Upon the conclusion of the testimony the Court declined to grant a nonsuit on the stated issues, and sent the cause to a jury, and the jury found $400 for the plaintiff.

The defendant has appealed and argued only the first two issues before stated, to wit: (1) The circumstances of the case showed a probable cause to so charge China, and the plaintiff, therefore, failed to prove no probable cause; and (2) the circumstances do not show that the railroad company had malice towards China in the indictment of him. Therefore the railroad company contends the Court ought to have so held and taken the case from the jury.

The circumstances of the case are these: China was operator and ticket seller for the Seaboard Company at Camden, and there were two others beside him, Moore and Lowman, and they served eight hours each in the twenty-four then there was the man called the "agent" at Camden, named Arnett; then there was a traveling auditor, named Adkins, to inspect and check the accounts of these employees; and then there was a comptroller at Portsmouth, in Virginia, named McKenzie. The practice was for China to receive the proceeds of all tickets sold by him and by Moore and Lowman, and he paid it to Arnett. China is 34 years old, unmarried, and has been in the service of the railroad company for 9 or 10 years. He received and sent dispatches, sold tickets, and checked baggage. He was under bond to the railroad company. His pay was $70 per month, payable the middle of each calender month; and two weeks' pay was always held back, that is to say, the $70 due and owing for service on January 1st would not be actually paid until January 15th. The receipts of the ticket office were $5,000 or $6,000 per month.

Three separate inspections by the auditor were testified to, one in the summer of 1914, probably in June, at which China is alleged to have been between $40 and $50 short; one in November, 1914, at which China is alleged to have

been $67 short; one in December, 1914, at which China is alleged to have been $91.53 short. At the last inspection Adkins procured a warrant for China, wherein he was charged with breach of trust with fraudulent intent; and China was arrested and lodged in jail for one hour, and until he could give bond. A bill was handed out against China in the Court of Sessions, and the grand jury found no bill. The instant action was then begun.

To sustain the action the plaintiff had, of course, to prove three things: (1) That there was no probable ground to charge him with larceny, for breach of trust with fraudulent intent is made larceny by the statute; and (2) that the railroad company was prompted to prosecute him by express malice towards him; and (3) that the prosecution was ended before the civil action was begun. *Stoddard* v. *Roland,* 31 S. C. 343, 9 S. E. 1027. And the first issue is the primordial one.

Whether a person is probably guilty of an offense charged in a bill of indictment is submitted to the grand juries of this State almost every day in the year. There ought to be no difficulty about so plain a proposition. First the grand jury passes upon the credibility of the testimony, has the witness sworn truly; and, secondly, it inquires if the testimony be true, for instance, if it be circumstantial, does it suggest probably the guilt of the party charged. The first matter is always for the jury; the second matter may sometimes be for the Judge, but it, too, is often for the jury. *Hogg* v. *Pinckney,* 16 S. C. 395.

And since the crime of larceny involves generally the secret intent of a party charged, and generally rests in circumstances, admitting the witnesses have sworn truly, yet the inference of intent to be drawn therefrom is generally a question of fact for the jury.

In the instant case, for example, granting that China broke his trust; that he used for his own purposes some $55

of the company's money, yet a Judge is not warranted, upon that showing alone, to infer therefrom as a matter of law that China probably had the secret intent to steal. *State* v. *Barnett,* 98 S. C. 422, 82 S. E. 795. Much more is that the case, when at the time of the misappropriation by China the company owed him for wages then due practically as much as China was short.

It is true that the circumstances tending to show probable guilt need not measure up to those which prove guilt; for the question in such a case is not whether a party be guilty, but whether he be probably guilty. Nevertheless the difference in the two cases is not in the character of the circumstances and the inferences to be drawn from them, but in the weight of the circumstances.

The issue which Adkins had to decide before the issuance of the warrant was the probable guilt of China of the crime of larceny. It is true Adkins was not called upon at the instant trial to prove that probable guilt; the burden was on the plaintiff to establish that the circumstances showed improbable guilt.

This brings us to a somewhat minute consideration of the testimony. The offense charged was (1) breach of trust; (2) with fraudulent intent, which is by the statute larceny. There was, by the confession of China, a breach of trust. It is a grave mistake, and often it constitutes the first step towards crime, for a trustee to use trust funds for his own purposes. But that wrong does not fruit into crime until the trustee shall form and execute the intent to steal the funds.

Probable cause means the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of crime for which he was prosecuted. Black's Law Dic. 945. All the facts and circumstances put in evidence at the instant trial were before Adkins, and were in his knowledge

when he instituted the prosecution. And when we judge of his action, we must put ourselves in his situation. The narrow issue, therefore, is, Were the circumstances sufficient to have excited the belief in a reasonable mind that China was guilty of larceny? And we must now judge of that, because we have the same facts and circumstances before us which Adkins had. The Circuit Judge had them before him, and he came to a different conclusion from Adkins. It stands to reason that upon this issue different opinions may be formed, for the region by its very terminology lies in the twilight zone of probability.

The appellant's counsel largely relies to excuse Adkins upon which he terms China's confession of guilt, and for evidence of that he points to a statement signed by China dated December 7, 1914. The statement is an itemized account of certain 12 tickets sold at the station on November 13, 16, 17 and 18, 1914, aggregating $50.13. The statement is prefaced with these words:

"Statement of tickets sold at Camden, S. C., for which money was turned over to C. L. China, first trick operator, the stubs of which were *suppressed* by China from the date of sale until 30th November, at which time *they were posted on the ticket records.*" (Italics supplied.)

The statement is concluded with these words:

"The above items represent a part of the shortage in my account, which money was *misappropriated* by me." (Italics supplied.)

But China testified that Adkins made out the statement and asked him to sign it, and he signed it without reading it. And Adkins did not deny that he wrote the statement. So the preface is rather more a declaration of Adkins than a confession of China.

Reverting again to the alleged confession in the statement, Adkins' own testimony shows there was no *suppression* by China. The $50.13 worth of tickets were entered on the stubs, the stubs were in the company's safe, and the entry of

the stubs was made on the books of the agency before Adkins started his inspection. The tickets were sold between November 13th and 18th, the entry was made in the books on November 30th, and the inspection was had December 5th. So the only questionable omission of China was in a deferred entry of the stubs on the books. And Adkins only characterized that as "a serious irregularity," repeated in the testimony three times. But there is a marked difference between an irregularity and a crime. When Adkins entered the ticket office on Saturday, December 5th, to audit it, he first counted the cash, and then checked the ticket stubs to ascertain if all the sold tickets had been accounted for. China testified he told Adkins that he was short $55, and he told him he had used that sum for his own purposes. He could not account for the balance of $36.53 which made up the $91.53. China had not then made up his written report for November; it was due to be made between the 1st and the 5th or 6th of the month. China told Adkins he owed the money to the company, and he would pay it as soon as he got his salary check. Adkins then left Camden on the evening of the 5th, and returned on Monday the 7th, and completed the audit. He then left again, and returned on Wednesday the 9th, and began the prosecution on that day. And on that day the company owed China for salary $87.50, and China owed the company for the sale of tickets $91.53.

The testimony of Adkins does not conflict with that of China. Adkins testified the stubs enumerated on the aforementioned statement were on the book in the office when he entered it on December 5th, and the signed statement recites that fact. He says they ought to have been entered there the day the tickets were sold, which is true; and he calls that suppression.

China testified, too, they ought so to have been entered daily, and they were not so entered because he did not have the cash to respond to the entry. Adkins testified that

China did not attempt to hide anything from him, and that China told him that he had used the $55 for his own purposes, and that China had charged the stubs in the books against himself, so that he appeared debtor to the company. There is no evidence that China used more than $55 of the $91.53.

Adkins also testified on direct examination:

"Probably he said something after we got into checking, and may have said he was going to be short."

It is conclusive, therefore, that as to the December shortage, the only sinister feature in China's conduct was his failure for 14 days to enter on the daily record from the stubs the sale of 12 tickets valued at $50.13. That he breached his trust as to this money there is no doubt—he admits that—but that he intended to steal the money, the only circumstance tending to prove that is the belated entry of the stubs on the record. Against any hurtful inference to be drawn from the use of the $50.13 the testimony of both China and Adkins establishes that when Adkins checked China in November, he noted as part of the assets of the office China's individual check on a bank postdated to cover an admitted shortage of $67.

Adkins testified he did not count that check as cash, but he testified he made a notation of the check, "I took it and looked at it and made a list of it." Adkins' only duty was to note, to audit, and not to receive. Payments were not made to him, but to Arnett.

It is plain that Adkins passed the November shortage of $67 as one devoid of the criminal intent, and accepted the check therefor as an asset in China's hands. The shortage of December was accompanied by no circumstances additional to that of November to suggest crime, save the belated entry of the stubs on the record book. If it be now suggested by counsel, as it is, that the November shortage was a circumstance of wrongdoing which lent color to that of December, the testimony shows that China told the railroad

authorities that the November shortage was due to theft by a third person from the safe, that the safe lock was insecure, and that Adkins changed the combination of it on China's complaint. There is no particle of testimony which warrants the reasonable suspicion that the shortage of November was accompanied by an intent to steal.

When Adkins appeared at the office in November to make the audit he found amongst the cash assets China's check on a bank. And the $67 was paid to the company out of the salary which was due to China on November 16th. The same thing is true with reference to the summer shortage of $40.50. That is relied upon as an incriminating circumstance. The auditor never pretended in his testimony that any criminal or suspicious circumstances attended that transaction. That is the suggestion only of counsel. China alone testified particularly about that transaction. He said that when the auditor came in the summer to make the audit, there were duebills in the cash drawer of himself, of Moore, and of Lowman, the three operators, and that Adkins "gave me credit for them." That was not denied. If, therefore, the auditor passed duebills in the summer, and audited a bank check in November, it was properly submitted to a jury to say whether or not the auditor was reasonably excusable in December in suspecting that the shortage of that month was accomplished with criminal intent; when the only suspicious circumstance attendant upon it was the belated entry of the stubs on the record book. The Judge was right, therefore, not to find as matter of law that there was probable cause for the prosecution.

The appellants refer to and rely on *Stoddard* v. *Roland,* 31 S. C. 343, 9 S. E. 1027, and *Smith* v. *Hughes,* 104 S. C. 149, 88 S. E. 369. It is easy, but it is often an idle performance, to differentiate cases; they speak for themselves. In both those cases the trial Judges concluded the testimony did not tend to prove there was no probable cause for the

prosecution; and this Court sustained the trial Judges. In the instant case the trial Judge came to a different conclusion, and we think a right conclusion. The facts of a case are of infinite variety; and generally each case depends upon the facts of it.

If there was no probable cause for the prosecution, was it prompted by express malice towards China? That is the other issue. Malice is so subtle a thing that it has been defined by our Court as a "term of art." It generally exists in hiding; and the very shield which is sometimes raised to conceal it often manifests its presence. Malice for a prosecution may be inferred from a want of probable cause to have instituted it. *Graham* v. *Bell,* 10 S. C. L. (1 Nott & McC.) 278, 9 Am. Dec. 687; *Stoddard* v. *Roland,* 31 S. C. 344, 9 S. E. 1027; *Hogg* v. *Pinckney,* 16 S. C. 400. The inference in such a case, it is true, is not one of law; it may be rebutted. *Graham* v. *Bell, supra.*

The appellant, in order to rebut the inference of malice, refers: (1) To the circumstance that the auditor consulted counsel before the prosecution was started; and (2) to the circumstance that the auditor passed over the shortage of June and November before he resorted to the Criminal Court.

The first circumstance was not conclusive of good faith in the prosecutor; it was only one of the circumstances of the case for the jury's consideration. *Hogg* v. *Pinckney,* 16 S. C. 401. The consultation of counsel might, in some cases, wear a sinister aspect.

The second circumstance was likewise one for a jury's interpretation, in view of what we have already said about those events.

The respondent's counsel sets off, on the other side, harsh words used by the auditor to China at the June audit, affirmed by China and denied by the auditor, and the release by the auditor of Moore, the operator who was also short,

the small amount involved, and the full protection of the company by a surety bond.

We find no error in the judgment, and it is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur in the opinion of the Court.

MR. JUSTICE FRASER, *dissenting.* I cannot concur in the opinion of the majority of the Court. In *Ford* v. *Kelsey and Deas,* 38 S. C. L. (4 Rich. Law 375), we find:

"It is said, however, the existence of a probable cause is a question for the jury. That is true where there is any dispute about facts. But where, as here, all the facts proved by the plaintiff are assumed to be true, and still they do not make out what in law constitutes proof of absence of probable cause, it follows there is nothing to go to the jury."

In this case the cardinal facts are practically undisputed, and I cannot see that the plaintiff has proven an absence of probable cause. The plaintiff's duty was to receive the defendant's money and forward the whole sum collected. The plaintiff's salary was not to be deducted. That was sent to the plaintiff by the proper officer of the defendant. All the money collected by the plaintiff belonged to the defendant. The plaintiff had used a part of the money in previous months. The amount used increased with each unlawful use. The defendant's agent came back within the month, and found that more money had been appropriated by the plaintiff than had ever been appropriated in a whole month before. The defendant found that the daily entry, required by the rules and custom of the company, had not been made. This failure to enter the daily receipts on the book had not been mere inadvertence, but intentional. It is true the data was in the office, but it required checking up to show that the accounts were short. The plaintiff had taken more of defendant's money than the defendant owed to the plaintiff.

It is conceded that there was a breach of trust. What was the intent? The plaintiff said, "I intended to pay it back?" How? His salary was not enough, and he had tried to raise the money from other sources before he took the defendant's money. Disregard the statement written by the defendant's auditor and signed by the plaintiff, and take only the letter written by the plaintiff, untrammeled by other influence, and he says:

"This is the first time that I have done such, and the company is due me enough to cover this, and as soon as I get it will replace this shortage. *I know this looks bad*" (italics mine), "but, as I have stated already that my intentions were good, that is positively the truth."

This was not the first time, and the salary would not cover it. It certainly looked bad. In that it looked bad, the plaintiff failed to prove, in my judgment, the want of probable cause. If a cashier of a bank takes the money of the bank and does not make the proper entries (or if he does), is he entitled to a judgment for malicious prosecution against the bank because the jury believed him when he said:

"I took the money to invest in cotton futures, and I felt sure when I did so that I would not only get back the money and replace it, but expected large profits for myself."

The difference between larceny and breach of trust with fraudulent intent is in the taking. Let me now illustrate with a case of larceny. Suppose that instead of taking the money from the Camden office, of which he was in rightful possession, the plaintiff had taken the money from the Columbia office, of which he was not in possession, and the charge had been larceny. Suppose the plaintiff had said:

"I took the money and did not enter it upon the books as I expected fully to return it. My offense was a mere trespass."

Even if the jury should take that view of it and acquit the plaintiff, I cannot conceive that the Court would allow a verdict for malicious prosecution to stand.

We are not called upon to pass upon the guilt of the plaintiff. The question is, Was this malicious prosecution? Was there probable cause? I think there was probable cause. and cannot concur.

MR. JUSTICE HYDRICK concurs in the opinion of MR. JUSTICE FRASER.