### 17843

Agnes MARGOLIS, Respondent, v. Michael TELECH, Appellant
(122 S. E. (2d) 417)

*Messrs. Harvey & Harvey,* of Beaufort, *for Appellant,*

*Messrs. Dowling, Dowling & Sanders,* of Beaufort, *for Respondent,*

November 7, 1961.

LEWIS, Justice.

This appeal arises out of an action instituted by the plaintiff against the defendant for malicious prosecution, resulting from the prosecution of the plaintiff by the defendant on a charge of grand larceny. The trial of the case resulted in judgment for the plaintiff for both actual and punitive damages, from which the defendant has appealed, alleging error in the rulings of the lower Court (1) in refusing defendant's motion for a directed verdict in his favor, (2) in granting plaintiff's motion to strike certain allegations from the an-

swer, and (3) in admitting in evidence the indictment upon which the Grand Jury had entered a *no bill*.

The controversy here arose over the ownership and possession of some of the personal property of the wife of the defendant under the circumstances hereinafter related. Since one of the main issues for our determination relates to the refusal of the trial judge to direct verdict in favor of the defendant, we must review the evidence and, in doing so, the testimony and the reasonable inferences to be drawn therefrom must be considered in the light most favorable to the plaintiff.

The defendant is a brother-in-law of the plaintiff, having married her sister. His wife died on April 5, 1958 from cancer and the funeral was held on April 9th. The wife of the defendant had been in failing health for some time and was confined to her bed for several weeks before she died. She required constant care and the plaintiff, who resided at Elmira, New York, came to Beaufort, South Carolina, in February 1958, to assist, along with another sister, in the care of the deceased, both residing with the defendant and his wife in their trailer home. After the death of the wife of the defendant, the plaintiff and her other sister continued to stay in the defendant's home until April 8th. On April 8th at about 10 o'clock p. m., the night before the funeral the plaintiff and her sister moved from the trailer home of the defendant, where they had been residing, to a nearby trailer so that, as the plaintiff testified, some of the defendant's people who had arrived for the funeral could stay with the defendant. The defendant was not at home when the plaintiff moved.

When the plaintiff moved from the home of the defendant on the night of April 8th, she carried with her a diamond ring, a black coat, a blue suit, and a fur coat, all property which the defendant contends belonged to his wife. The plaintiff testified that the black coat was a gift from her to the deceased, but had never been worn, and the deceased had

told her, with the full knowledge of the defendant, to take it back and get a return of her money. She further testified that the fur coat and blue suit had been loaned to the deceased by her and that the defendant knew of such fact. According to plaintiff's testimony, the ring had been given to her by the deceased about two weeks before she died and had been in the plaintiff's possession since that time.

Very soon after the death of his wife, the defendant began looking for her diamond ring. On the night of April 8th he was informed by a neighbor of a conversation by the neighbor with the plaintiff relative to where the ring was located. This neighbor told him that the plaintiff had informed her a day or so before that she, the plaintiff, had placed the ring in a small jewelry box belonging to defendant's wife. He was told to look in this jewelry box as the plaintiff had said that she put it there. Shortly after this conversation with the neighbor, the defendant returned to his trailer home and found that the plaintiff had moved to a nearby trailer. He testified that he searched his trailer and failed to find the ring or any of his wife's property. He then went to the trailer, to which the plaintiff had just moved, for the purpose of locating the ring. Testimony for the plaintiff is that, when the defendant came to the trailer where she was staying, he was angry, used profanity, almost knocked the door down, and accused the plaintiff of stealing his wife's ring, whereupon the plaintiff told him that his wife had given the ring to her and that she did not have anything that belonged to him. There is testimony that the defendant then told the plaintiff that he was going to have her arrested.

Following the foregoing incident, early on the next morning, before attending the funeral of his wife, the defendant went to a magistrate at Beaufort and procured the issuance of an arrest warrant for the plaintiff, in which he alleged that "one Agnes Margolis (the plaintiff) did commit the crime of grand larceny by going in the home of Michael Telech (the defendant) and taking all of his deceased wife's clothing and one diamond ring worth $800.00 while Michael

Telech was at the funeral home with his dead wife". The defendant testified upon cross examination that the purpose for procuring the warrant for the plaintiff was to secure a return of the foregoing articles of personal property. Upon this warrant the plaintiff was arrested as she left the cemetery on her return from the funeral of her sister. A few hours later the plaintiff was released from custody after posting bond for her appearance at the next term of the Court of General Sessions for Beaufort County.

Since a charge of grand larceny is beyond the jurisdiction of the magistrate, the warrant was in the regular course sent to the Solicitor for action. At the June Term of the Court of General Sessions the Solicitor presented to the Grand Jury an indictment against the plaintiff containing two counts, one for housebreaking and the other for grand larceny. The Grand Jury returned the indictment with a *no bill* which was followed by an order of the Court releasing and discharging the plaintiff. This action for malicious prosecution followed.

During the trial the defendant made timely motion for a directed verdict in his favor upon the grounds that the evidence failed to show that he acted maliciously and without probable cause in instituting the prosecution against the plaintiff for grand larceny. The defendant also contended that the evidence was insufficient to sustain a verdict for punitive damages. This motion was refused and the defendant alleges that the lower Court erred in so doing.

It is well settled that, in order to maintain an action for malicious prosecution, it is incumbent upon the plaintiff to show that the prosecution was instituted maliciously, without probable cause, and that it terminated favorably to plaintiff. *China v. Seaboard Air Line Ry.,* 107 S. C. 179, 92 S. E. 335; *Stoddard v. Roland,* 31 S. C. 342, 9 S. E. 1027. All of the foregoing issues were submitted by the trial judge to the jury for determination.

The defendant contends that the plaintiff has failed to show malice and want of probable cause necessary to sustain her action, but raises no question in this appeal as to the sufficiency of the evidence to show a termination of the prosecution favorably to the plaitniff. "By probable cause is meant the extent of such facts and circumstances as would excite the belief in a reasonable mind acting on the facts within the knowledge of the prosecutor that the person charged was guilty of a crime for which he has been charged, and only those facts and circumstances which were or should have been known to the prosecutor at the time he instituted the prosecution should be considered. *Brown v. Bailey,* 215 S. C. 175, 54 S. E. (2d) 769; *China v. Seaboard Air Line Ry.,* 107 S. C. 179, 92 S. E. 335." *Elletson v. Dixie Home Stores,* 231 S. C. 565, 99 S. E. (2d) 384, 387.

Malice is the deliberate, intentional doing of a wrongful act without just cause or excuse. In the case of *Hogg v. Pinckney,* 16 S. C. 387, cited with approval in *Jennings v. Clearwater Mfg. Co.,* 171 S. C. 498, 172 S. E. 870, it is said that "the term 'malice', as applied to torts, does not necessarily mean that which must proceed from a spiteful, malignant or revengeful disposition, but a conduct injurious to another, though proceeding from an ill-regulated mind not sufficiently cautious before it occasions an injury to another. 2 Bouv. Dic. 98." And, in the same case, it is said: Malice "is implied where it shows a disregard of the consequences of the injurious act, without reference to any special injury which he may inflict on another", and "in doing some illegal act for one's own gratification or purposes, without regard to the rights of others or the injury he may inflict on another." And in actions for malicious prosecution malice may be inferred from a want of probable cause. *Elletson v. Dixie Home Stores, supra,* 231 S. C. 565, 99 S. E. (2d) 384; *Brown v. Bailey, supra,* 215 S. C. 175, 54 S. E. (2d) 769.

In the light of the foregoing principles, we think that the facts and circumstances of this case presented issues which were properly submitted to the jury for determination. The evidence shows that the plaintiff was of good reputation. She was a sister-in-law of the defendant and had resided in his home for a period of approximately thirty days during the last illness of his wife. There is testimony that the defendant knew that the articles of clothing removed from his home by the plaintiff belonged to her, and that he was told by the plaintiff that the deceased had given the diamond ring to her. He admits that his wife, prior to her death, had given many of her other personal belongings to friends. The neighbor who told the defendant of her conversation with the plaintiff concerning the ring revealed no circumstances from which the defendant could reasonably conclude that the plaintiff had stolen the property. When the plaintiff moved from the home of the defendant on the night before the funeral of his wife, she moved to another trailer just a short distance away. Under the foregoing circumstances the defendant procured the issuance of a warrant charging the plaintiff with the crime of grand larceny, as he testified, for the purpose of recovering his property.

The evidence tends to show both a want of probable cause and malice in the institution of the prosecution against the plaintiff for grand larceny, sufficient to sustain the verdict for both actual and punitive damages; and the motion for a directed verdict was properly refused.

The defendant next contends that the lower Court erred in striking certain portions of the answer. Upon the call of the case for trial, on motion of the plaintiff, previously noticed, the trial judge ordered stricken from the answer of the defendant, as irrelevant and immaterial, the following allegations:

"The defendant in this action did not know that the bill of indictment which was presented to the Grand jury charged Agnes Margolis with housebreaking until he went into the Grand Jury room to testify. In the Grand Jury Room, it

was called to his attention that the bill of indictment presented to the Grand Jury went much further than the affidavit of the defendant herein and the warrant of the magistrate and charged the said Agnes Margolis with housebreaking. The offense of housebreaking and grand larceny was explained to this defendant by members of the Grand Jury and since he had not charged the said Agnes Margolis with housebreaking and grand larceny but simply grand larceny, a lesser offense than that included in the bill of indictment, and at the suggestion of some member of the Grand Jury, he consented that the bill of indictment charging the said Agnes Margolis with housebreaking and grand larceny be returned as a 'no bill'. That in the Grand Jury room the defendant in this action was also influenced in agreeing that a 'no bill' be returned by the fact that the said Agnes Margolis was a sister of his wife and in memory of his wife whom he dearly loved and respected he would not want to see her prosecuted for housebreaking."

The foregoing portion of the answer in effect alleges that the *no bill* entered by the Grand Jury was not the result of deliberations by that body but the result of defendant's consent to dismiss the prosecution, such consent given when he appeared before the Grand Jury to testify concerning the charge against the plaintiff for grand larceny. He alleges that he consented to a return of a *no bill* because the indictment contained the additional charge of housebreaking. The warrant procured by the defendant charged the plaintiff with the crime of grand larceny. The Solicitor prepared and submitted to the Grand Jury an indictment charging that offense and also the crime of housebreaking, but this does not require that the Grand Jury make the same disposition of both charges. It was within its power and discretion to return a *true bill or on bill* as to all charges in the indictment, or a *true bill* as to one and a *no bill* as to the other. A *no bill* as to both charges in the indictment was not required to remove the charge of housebreaking therefrom; if such had been desired, and the prosecution continued as

to the offense of grand larceny. The disposition to be made of the charges in the indictment was within the sole discretion of the Grand Jury. If the defendant agreed to the return of a *no bill* he was under no legal compulsion to do so.

However, the defendant seeks under the foregoing allegations to show what occurred during proceedings of the Grand Jury. They could only be established by an inquiry into the deliberations of the Grand Jury to determine what induced the return of a *no bill*. Such an inquiry is prohibited by the cloak of secrecy which has always been thrown around the deliberations of that body. As stated in the case of *State v. Rector, et al.,* 158 S. C. 212, 155 S. E. 385, 390 : " long as the grand jury has been known to our judicial system, and that body came with the organization of our first courts, their acts and proceedings have been regarded almost sacredly secret. The oath that each and every member of the Grand Jury has taken in open court in South Carolina for many years includes the swearing on his part that 'the State's counsel, your fellows', and your own, you shall well and truly keep secret."

"The language of the oath whereby Grand Jurors are sworn to keep secret the State's their fellows', and their own counsel has obvious reference to all things which transpire in the Grand Jury room, and the principle underlying this injunction of secrecy extends equally to all persons required by law to be present before the Grand Jury. It has been declared well settled that Grand Jurors cannot testify as to how they or any of their fellows voted, as to what induced them to find an indictment, or as to opinions voiced by their fellows or themselves upon any question properly before the Grand Jury." 24 Am. Jur. 866, Section 48.

Therefore, testimony as to what transpired in the proceedings of the Grand Jury which might have influenced the form of its verdict would be clearly inadmissible. Since the evidence to support the foregoing allegations would be inadmissible, the portion of the answer in

question was properly stricken. *Butler v. Schilletter*, 230 S. C. 552, 96 S. E. (2d) 661.

The last question for determination concerns the contention by the defendant that the trial judge erred in the admission in evidence of the indictment upon which the Grand Jury had entered a *no bill*. During the trial the Court admitted in evidence the records of the criminal prosecution upon which this action is based consisting of the arrest warrant, the indictment, and the subsequent order of the Court discharging the plaintiff. While the record is not clear that the defendant objected to the introduction of the indictment in evidence, the trial judge apparently considered that timely objection had been made and passed upon the question in his order refusing the motion of the defendant for a new trial. We have for that reason considered the question.

As pointed out hereinabove, it was necessary in this case for plaintiff to show that the criminal proceeding out of which the malicious prosecution arose terminated in her favor. The indictment showing the return thereon of a *no bill* by the Grand Jury was admitted in evidence in proof of such fact. It was clearly admissible for such purpose. *Hogg v. Pinckney*, 16 S. C. 387; 34 Am. Jur. 781, Section 133. See Anno: 57 A. L. R. (2d) 1087.

The defendant argues, however, that the introduction of the indictment in evidence with a *no bill* entered thereon was prejudicial to him, since the indictment contained a charge of the offense of housebreaking, a charge not made by him in the warrant instituting the prosecution, but included by the Solicitor in the indictment presented to the Grand Jury. He contends that the jury could have concluded that want of probable cause was shown because the charge of housebreaking was included in the indictment, an offense of which the plaintiff was admittedly not guilty. Such claimed prejudice to the defendant in the trial of the case is not found. The complaint charged the defendant with having maliciously prosecuted the plaintiff for grand larceny only. The testimony was

directed exclusively to this issue. The warrant procured by the defendant was in evidence showing that only the charge of grand larceny was made therein. The instructions of the Court to the jury left no doubt that the issues to be considered by them concerned the alleged malicious prosecution of the plaintiff by the defendant for grand larceny based upon the warrant procured by him, and not for housebreaking.

This action was based solely upon the charge made in the warrant and not the indictment. As stated above, the indictment was admitted in evidence only to show a termination of the prosecution against the plaintiff for grand larceny; for it constituted no evidence of want of probable cause, *Taylor v. Dominick,* 36 S. C. 368, 15 S. E. 591; *Fulmer v. Harmon,* 3 Strob. 576; or malice, 34 Am. Jur. 783, Section 136. The trial judge instructed the jury that the finding of a *no bill* by the Grand Jury did not relieve the plaintiff of the burden of proving both want of probable cause and malice. We do not think that the jury could have been confused as to the purpose for which the indictment could be considered by them.

Affirmed.

TAYLOR, C. J., and OXNER, LEGGE and Moss, JJ., concur.