**James E. WHITE, Plaintiff,**

v.

**George COLEMAN, Senior, George Coleman, Junior, and George Coleman Motors, Inc., a Corporation, Defendants.**

**Civ. A. No. 4697.**

United States District Court
D. South Carolina,
Greenville Division.

Nov. 10, 1967.

Robert A. Clay and Clarence E. Clay, Greenville, S. C., for plaintiff.

Wofford & Snyder, Greenville, S. C., for defendants.

DONALD RUSSELL, District Judge.

In compliance with Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

## FINDINGS OF FACT

### I

The plaintiff, James E. White, now and at the commencement of this action a citizen of the State of Alabama, was at the times hereinafter mentioned a resident of Greenville, South Carolina, and an officer and the general manager of the Commercial Body Company, a corporation, engaged at Greenville in the purchase, repair, and sale, primarily, of used trucks and trailers.

### II

The defendant, George Coleman Motors, Inc., a South Carolina corporation, is the franchised Ford automobile and truck dealer in Travelers Rest, South Carolina. Its principal officers and sole stockholders are the defendants, George Coleman, Sr., and his son, George Coleman, Jr., both of whom are residents of Travelers Rest.

### III

Sometime in the early part of October, 1961, a used GMC tractor and Fruehauf trailer were at the place of business of Commercial Body Company for the purpose of repair and sale by Commercial Body Company, but belonged to a concern in Spartanburg. The defendant George Coleman, Jr. went to Commercial Body Company for the purpose of appraising the equipment with an idea of working out a trade with the Spartanburg concern, which trade was later effected, and the equipment moved to the place of business of Coleman Motors in Travelers Rest. Before Mr. Coleman, Jr. traded for the equipment, the plaintiff told Mr. Coleman, Jr. that if he traded for it, he thought he could sell the equipment for him. The defendants apparently agreed that the plaintiff should attempt to secure a purchaser for the equipment at a price that would give the defendant Motor Company the amount allowed by it for such equipment in its trade.

### IV

On October 16th, the plaintiff advised George Coleman, Jr., that he had a prospect in Greenwood, South Carolina, for the equipment. The plaintiff, along with one of his salesmen, thereupon went to the premises of George Coleman Motors where the equipment was stored and secured possession thereof from the defendants for the purpose of showing the same to the prospect in Greenwood. No sale was effected with this prospect and the equipment was returned to the premises of the Motor Company.

### V

Later, the plaintiff telephoned George Coleman, Jr. and told him he had made a sale of the tractor and trailer and that he would send for such equipment in order to complete the sale. He requested a bill of sale and certificate of title for the equipment. He said, also, that he was sending the money in payment of the amount fixed by the defendants as their sale price of the equipment. This transaction between the Body Company, acting through the plaintiff, and the Motor Company, acting through George Coleman, Jr., was intended as a cash transaction; no credit was being extended the Body Company. However, when the agent of the Body Company, acting under the instructions of the plaintiff, arrived at the premises of the Motor Company to pick up the equipment, bill of sale, and certificate of title he had no money to deliver in payment. The defendant Motor Company, however, gave to the agent of the Body Company possession of the equipment, along with the bill of sale, but retained the certificate of title, in order to assure that the Motor Company received payment before title to the equipment passed.

The equipment was thereupon taken from the premises of the Motor Company to the premises of the Body Company. Apparently, at the time the plaintiff rep-

resented to the defendant Coleman, Jr. that he had sold the equipment, he had not made any sale. Shortly thereafter, however, it was shown to an official of the Storey Trucking Company, an operator of a trucking business in the State of Georgia. The Storey Trucking Company purchased such equipment and a check payable to Commercial Body Company for $2,000.00 was delivered in payment to the plaintiff, who, in turn, without depositing it in the Body Company's account or making entry upon the Body Company's books of the receipt thereof, endorsed it over to a creditor of the Body Company, who was identified as a friend of the plaintiff and other stockholders of the Body Company. Both at the time possession of the equipment was secured and at the time the sale was made, to the knowledge of the plaintiff, the Body Company was insolvent. Within two weeks after this transaction, the Body Company was placed in receivership.

### VI

When the Motor Company failed to receive payment for the equipment, George Coleman, Sr. and George Coleman, Jr. visited the offices of the Body Company and demanded payment of the cash sale price. The plaintiff accordingly issued to the Motor Company a check of the Body Company in the amount of $1,400.00 in payment for the equipment. This check was deposited on the following day by the Motor Company but was returned unpaid on account of insufficient funds to cover same. In the meantime, the defendants had retained certificate of title, since in all sales in which checks were accepted by it, it was the policy of the defendants to retain certificate of title until the check accepted had cleared.

Both the plaintiff and his sister, who was bookkeeper of the Body Company and had prepared the check for the signature of the plaintiff, testified that the two Colemans were told at the time of the delivery of the check that there were no funds to the credit of the Body Company in the bank against which the check was drawn. The Colemans strenu-ously denied this testimony. While it is never easy to resolve such clear-cut conflicts in testimony, it would seem unreasonable that if the Colemans had been told that the check was not good, they would have promptly deposited it in the bank, knowing that it would be returned. The more credible conclusion is that the Colemans were not so advised and accepted the check in good faith, believing it was good.

### VII

After the check was returned, marked "insufficient funds", George Coleman, Sr. telephoned the Solicitor of the Thirteenth Judicial Circuit for advice in connection with this transaction with the plaintiff and the Body Works. He was advised by the Solicitor, who at the time was James R. Mann, Esquire, to secure a warrant against the plaintiff for the issuance of a "bad check". Section 176, Title 8, Code of Laws of South Carolina, 1962. There is some question in the record as to just what Mr. Coleman, during this conversation, told Mr. Mann about the transaction. Mr. Mann testified that, while he could not recall the exact conversation, he was certain that he had understood from Mr. Coleman that the transaction represented a cash transaction and that the check involved had not been given for an antecedent indebtedness. Mr. Coleman, Sr. testified that he told the Solicitor exactly how the transaction took place. It is useless to attempt to reconstruct exactly what conversation passed between Mr. Mann and Mr. Coleman on this occasion. Mr. Mann was frank in stating that he could not recall the conversation itself but, because of his experience with fraudulent check cases, he was certain he inquired specifically whether the check in question was given for an antecedent indebtedness. It is clear, I think, that Mr. Coleman, on the other hand, honestly believed that his Company's dealings with the plaintiff represented a cash transaction; certainly, the defendants never intended at any time to extend credit to the Body Company or to establish with it a creditor-debtor relationship. I think it is clear

that Mr. Coleman, in soliciting the advice of the Solicitor, was acting honestly and in good faith and did not seek purposely to mislead the Solicitor in any statement made to him and that, so far as he understood the transaction, he regarded the entire transaction as a cash transaction, of which the check was an integral part, and that he sought to give Mr. Mann a fair account of the transaction as he assessed it.

Following this telephone conversation, Mr. Mann called the local Magistrate at Travelers Rest and dictated a warrant for the arrest of the plaintiff under the charge of issuing a fraudulent check under Section 176, Title 8, Code of Laws of South Carolina, 1962. The warrant, as dictated, was then signed by George Coleman, Jr. and plaintiff's arrest thereunder followed.

Subsequent to the plaintiff's arrest upon this warrant, a true bill was returned by the Grand Jury of Greenville County; but trial was delayed for some two years. At that time, a change in the office of Solicitor occurred. On his last day in office, Mr. Mann, with whom George Coleman, Sr., originally talked, communicated with Mr. Coleman, told him that as a result of further investigation and discussion with counsel for plaintiff, he was of opinion the plaintiff could not be successfully prosecuted for the issuance of a fraudulent check, suggested that the indictment be dismissed, and assured Mr. Coleman that, on the basis of representations made to him by counsel for the plaintiff, there would be no attempt by the plaintiff to sue the Colemans for malicious prosecution. Mr. Coleman told Mr. Mann that he would like to talk to the new Solicitor, B. O. Thomason, Jr., Esquire, and obtain his advice on what should be done. Accordingly, the two Colemans talked to Mr. Thomason, giving him their version of the transaction. Mr. Thomason was of the opinion, after a thorough independent investigation of the facts, that, while a prosecution on the check charge might not lie, the facts would support a prosecution for breach of trust of the equipment, an offense considerably more serious than that originally charged. Mr. Thomason accordingly nol-prossed the indictment upon the check and submitted to the Grand Jury an indictment charging the plaintiff with a breach of trust. The Grand Jury returned a true bill, the cause proceeded to trial, motion for directed verdict of not guilty was denied, a jury verdict of guilty was returned, which, upon appeal, was reversed, the Court holding that if there was a breach of trust, an issue which it did not feel called on to determine, the breach would have involved the proceeds of the sale of the equipment and not of the equipment itself. State v. White, 244 S.C. 349, 355–356, 137 S.E.2d 97.

Following this termination of the prosecution, the present action in malicious prosecution was filed.

## CONCLUSIONS OF LAW

### Jurisdiction of the Court

This action falls within the diversity of citizenship jurisdiction of this Court.

### Merits

■ Plaintiff's suit in malicious prosecution is based upon the first prosecution begun by the defendants, charging issuance of a fraudulent check in violation of Section 176, Title 8, Code of Laws of South Carolina, 1962.[1]

■ To maintain such action in malicious prosecution, the plaintiff has the burden of establishing the institution by the defendants of a prosecution maliciously without probable cause and the termination of such prosecution in favor

1. The reason plaintiff does not base any action on the second prosecution, even though both it and the earlier prosecution arose out of the same set of circumstances, is obvious. Though reversed on appeal, the conviction of the plaintiff on the second charge in the Circuit Court represented conclusive evidence of probable cause, barring recovery thereon for malicious prosecution. Section 667(1), Restatement of Torts, American Law Institute; Moore v. Winfield (1935) 207 N.C. 767, 178 S.E. 605, 97 A.L.R. 1019.

of the plaintiff. Margolis v. Telech (1961) 239 S.C. 232, 237, 122 S.E.2d 417; China v. Seaboard Air Line Ry. Co. (1916) 107 S.C. 179, 182, 92 S.E. 335. The institution of the fraudulent check charge by the defendants and the termination of that proceeding by a *nolle prosequi* on the part of the Solicitor are conceded.[2] The defendants, however, vigorously deny the essential elements of want of probable cause or malice. Since malice may be inferred from an absence of probable cause but not the reverse, the real issue in this case is whether the plaintiff has borne the burden of proving an absence of probable cause for the prosecution, for "While actions for malicious prosecution may be maintained in the courts, they have never been regarded with favor and are not encouraged as it is in the interest of good order that criminals be brought to justice; and it is generally held that the prosecutor is free from damage if there be probable cause of the accusation made, the burden being upon the plaintiff to show the absence of probable cause as a part of the cause of action." Prosser v. Parsons (1965) 245 S.C. 493, p. 502, 141 S.E.2d 342, p. 347.

■ Probable cause does not turn on the plaintiff's guilt or innocence of the criminal charge; it depends on whether the person responsible for the prosecution had at the time knowledge of such facts and circumstances as would excite the belief in a reasonable mind that the person charged was guilty of the crime charged. Parrott v. Plowden Motor Co. (1965) 246 S.C. 318, 321–322, 143 S.E.2d 607; see also, Ralph v. Pepersack (C.C.A. 4, 1964) 335 F.2d 128, 132. And if the person instituting the prosecution acted on the basis of advice given by the prosecuting attorney, after a full and fair disclosure of the facts, probable cause exists. Prosser v. Parsons, supra, p. 502, 141 S.E.2d 342. North British & Mercantile Ins. Co. v. Feldman (C.C.A.4,

1945) 149 F.2d 582, 584; Annotation, 10 A.L.R.2d 1215. Moreover, " 'where the grand jury have returned a true bill upon the charge made, such finding amounts to a judicial recognition that probable cause does exist * * *.' " (Brown v. Griffin (1839) 25 S.C.L., Cheves, 32, 33) and "infers prima facie probable cause for the prosecution" (Fulmer v. Harmon (1849) 34 S.C.L., 3 Strob., 576, 581), which, of course, may be rebutted by proof of false or fraudulent testimony before the grand jury. 54 C.J.S. Malicious Prosecution § 35, pp. 996–997; Young v. Andrews Hardwood Co. (1931) 200 N.C. 310, 156 S.E. 501, 502; see, also, Section 664, Restatement, Torts.

■ I am of opinion, on the evidence in this cause, the plaintiff has failed to sustain the burden of establishing want of probable cause.

That plaintiff's conduct in his dealings with the defendants was such as to cause "an ordinarily reasonable" person to believe some form of prosecution was warranted seems accepted. There were, the record shows, during the two prosecutions, differences of opinion about the specific and technical form of charge which such conduct warranted; but little or no difference that some type of prosecution was warranted. Initially, Solicitor Mann thought a charge of issuance of a fraudulent check was the appropriate criminal remedy. He was upheld in this opinion by the return by the grand jury of a "true bill" on such charge. Some years later, in examining anew the facts, Solicitor Thomason concluded the proper charge to be breach of trust of the equipment itself. His conclusion found recognition in the return of the grand jury; it withstood a motion for a directed verdict on trial; and it finally resulted in a jury verdict of guilty. Such conviction was, however, reversed on appeal, the Supreme Court sustaining the contention of the plaintiff

2. That the entry of such *nolle prosequi* by the Solicitor under the circumstances in this case is a sufficient termination of the prosecution to support an action

in malicious prosecution, see Harrelson v. Johnson (1921) 119 S.C. 59, 62–64, 111 S.E. 882. But, cf., Heyward v. Cuthbert (1827) 4 McCord, 354.

that, if the evidence supported a criminal charge, (which, of course, the plaintiff denied) such charge was breach of trust of that part of the proceeds of the sale belonging to the defendants (as distinguished from the equipment itself). The record is accordingly fairly clear that, as I have said, reasonable cause existed for the belief that the plaintiff was guilty of some form of criminal fraud; the only difference revolved about the fairly technical question, about which both lawyers and Courts had differed throughout, as to the form the criminal charge of fraud should take. Because the defendants initially began with the charge of issuance of a fraudulent check rather than breach of trust, the plaintiff contends the defendants chose a remedy for which there was not probable cause and should be mulcted in damages.

The argument of the plaintiff that the initial prosecution was without probable cause proceeds on the assumption that the check given by the plaintiff was for an antecedent indebtedness and would not, for such reason, support a prosecution under Section 176, Title 8, Code of Laws of South Carolina, 1962. He would dismiss the defendants' reliance on the advice of Solicitor Mann because, he argues, the defendant George Coleman, Sr., falsely represented to Mr. Mann that the check was not given for an antecedent indebtedness. He does not, however, seek to impeach the finding of the grand jury in returning a "true bill". He, also, relies upon the subsequent opinion of Solicitor Thomason that a charge under Section 176 would not lie but one for breach of trust would.

As we have seen, however, the question is not whether the plaintiff was actually guilty of issuing a fraudulent check but whether the circumstances under which the check was issued were such that an ordinary person of reasonable prudence would have believed that the plaintiff was guilty. As stated, the defect in the prosecution under Section 176, according to plaintiff, was that the check was given for an antecedent indebtedness. I am sure, however, the defendants never understood that they were accepting a check for an antecedent indebtedness. Their transaction with the plaintiff was, in their opinion, at all times a cash one. The fact that there was culpable delay on the part of the plaintiff in delivering the check in completing the cash transaction did not destroy or alter, in the opinion of Mr. Coleman, the character of the transaction; it remained, in his mind, a cash transaction. The defendants did nothing to transform the cash transaction into an extension of credit. Cf., Security Trust & Sav. Bank v. Wm. R. Staats Co. (C.C.A.9, 1916) 233 F. 514, cert. den. 242 U.S. 639, 37 S.Ct. 111, 61 L.Ed. 540. They actually retained the official certificate of title in order to prevent the plaintiff from making a legal transfer until they received payment. Certainly a lay mind could and probably would reasonably conclude that this situation did not involve a payment on an antecedent indebtedness but represented a payment upon a contemporaneous cash sale. Cf., Engelkes v. Farmers Co-Operative Company (D.C.Iowa 1961) 194 F. Supp. 319, 324–325; In re Perpall (C.C.A.2, 1921) 271 F. 466, 468–469.

The issue of probable cause, as Mr. Justice (later Chief Justice) McIver in Caldwell v. Bennett (1884) 22 S.C. 1, 8–9, so well states it, "is not whether such facts and circumstances would induce a well-educated lawyer, such as every Judge is supposed to be, to believe that an offense had been committed * * * but whether such facts and circumstances would be sufficient to induce an ordinarily reasonable and impartial man, a class which the jury is supposed to represent, to believe that the offense had been committed." Whether the check herein was given for an antecedent indebtedness, or, an integral part of a contemporaneous act, a cash transaction between the parties, albeit by reason of the culpable act of the plaintiff, the actual payment had been delayed, is accordingly to be resolved, not by legal hair-splitting, but by determining how an ordinarily reasonable man, not expert in the law, might conclude from all the

facts and circumstances in this case. See Lipford v. M'Collum (1833) 1 Hill 82 (19 S.C.Law)[3]; and China v. S.A.L., supra, at p. 184, 107 S.C., 92 S.E. 335.

I do not regard it as of moment whether George Coleman, Sr. told Solicitor Mann the check was not given for an antecedent indebtedness or not. Actually, Mr. Mann frankly stated he could not recall the exact conversation with Mr. Coleman, a conversation that took place six years earlier. He was certain, though, that he did inquire whether the check was given for an antecedent indebtedness. Whether he used that exact language or merely inquired whether the check was part of a cash transaction is uncertain. In either event, Mr. Coleman would have replied the same way. To his mind, the Body Company was never a debtor of his company and the only transaction his company had with the Body Company was for cash.

 Nor will the fact that some two years after the warrant under Section 176 was issued, Mr. Mann concluded that the prosecution would not lie, alter the situation. Similarly, Mr. Thomason's opinion is equally without point on the issue of probable cause. It is settled in this jurisdiction that the discontinuation of the prosecution by the solicitor through the entry of a *nolle prosequi* "constitute(s) no evidence of want of probable cause, raise(s) no presumption thereof, and establish(es) no prima facie case of want of probable cause." Taylor v. Dominick (1892) 36 S.C. 368, 376, 15 S.E. 591; Caldwell v. Bennett (1884)

22 S.C. 1, 5; Margolis v. Telech, supra, at pp. 242–243, 239 S.C., 122 S.E.2d 417; Annotation, 59 A.L.R.2d 1429. And this accords with the rule adopted in the better-reasoned authorities. See, in particular, the strong opinion of Judge Rose in Western Union Telegraph Co. v. Thomasson (C.C.A.4, 1918) 251 F. 833, 838, and Annotation, 59 A.L.R.2d 1429. As I have pointed out, it is not the guilt of the plaintiff that determines probable cause, it is the reasonable belief of the prosecutor.

Moreover, it must be recalled that Mr. Mann's final opinion was reached after a grand jury had inquired into the charge under Section 176. George Coleman, Jr., was the sole witness before that grand jury. There is not a particle of evidence that he colored in any way the recital of the facts surrounding the issuance of the check in question. The return of a "true bill" by the grand jury, unimpeached by any evidence in the record, goes far to sustain the conclusion that an ordinarily reasonable person, unversed in the law, would have believed that the check given the defendants by the plaintiff fell within the prohibition of Section 176.

Based upon the findings of fact herein and the reasons stated, I am of the opinion that the plaintiff has failed to make out a case for recovery of damages for malicious prosecution herein and that defendants are entitled to judgment.

Let judgment be entered accordingly, and

It is so ordered.

3. Mr. Justice O'Neall said in this case, in which the solicitor had entered a *nolle prosequi* of a prosecution for perjury and suit in malicious prosecution had followed: "The solicitor, on entering the nolle prosequi on the back of the warrant, had assigned his reason, to wit: that the oath was extra-judicial, and, therefore, perjury, could not be predicated on it. This reason was true and legal; but yet, an extra-judicial false oath would be reasonable and probable cause for the institution of a prosecution for perjury to any one not a lawyer."