**Lorrie KIMSEY, Plaintiff–Appellant,**

v.

**CITY OF MYRTLE BEACH, SOUTH CAROLINA, Defendant–Appellee.**

**No. 96–1187.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 30, 1997.

Decided March 19, 1997.

**ARGUED:** John Dwight Hudson, Myrtle Beach, SC, for Appellant. James Barr Van

Osdell, Van Osdell, Lester, Howe & Rice, P.A., Myrtle Beach, SC, for Appellee. **ON BRIEF:** Cynthia Graham Howe, Van Osdell, Lester, Howe & Rice, P.A., Myrtle Beach, SC, for Appellee.

Before MURNAGHAN, NIEMEYER and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge NIEMEYER and Judge MOTZ joined.

## OPINION

MURNAGHAN, Circuit Judge:

Plaintiff–Appellant Lorrie Kimsey sued Defendant–Appellee the City of Myrtle Beach, South Carolina (the "City") for injuries that she sustained when she fell from the bottom step of a wooden dune walkover that the City had installed on the beach. The district court granted summary judgment to the City on the ground that the South Carolina Recreational Use Statute (the "SCRUS"), S.C.Code Ann. §§ 27–3–10 to 27–3–70 (Law.Co-op.1991), and various provisions of the South Carolina Tort Claims Act (the "SCTCA"), S.C.Code Ann. §§ 15–78–10 to 15–78–190 (Law.Co-op.Supp.1995), barred Kimsey's claims. For the reasons stated below, we affirm the district court's judgment on the ground that the SCRUS bars Kimsey's claims.

### I.

On June 4, 1993, Lorrie Kimsey, her sister, and two friends traveled from their homes in North Carolina to the City for a vacation. They arrived at the Best Western–Dayton House Hotel (the "Hotel") early in the evening. Later that night, Kimsey and a friend left the Hotel and walked towards the beach. They sat down on the steps of a "walkover" that the City had installed behind the Hotel. A "walkover" is a wooden structure over a sand dune, similar to a bridge, that allows pedestrians to access the beach without disturbing the sand dune. After a few minutes, Kimsey and her friend descended the walkover to the beach. When Kimsey stepped off of the bottom step, she twisted her foot and fell, breaking her knee. Kimsey contends

that she fell because sand erosion had created a substantial drop-off between the last step and the beach.

On June 21, 1994, Kimsey filed a diversity suit against the City in the District Court for the District of South Carolina. She alleged that the City negligently and recklessly designed the walkover, failed to maintain the walkover, failed to illuminate the walkover, and failed to warn of the erosion hazard. After discovery, the City moved for summary judgment.

On January 3, 1996, the district court granted the City's motion for summary judgment. The court found that various provisions of the SCTCA, S.C.Code Ann. §§ 15–78–10 to 15–78–190 (Law.Co-op.Supp.1995), immunized the City from Kimsey's claims. The court also found that the SCRUS, S.C.Code Ann. §§ 27–3–10 to 27–3–70 (Law.Co-op.1991), barred Kimsey's claims. Kimsey now appeals.

### II.

We review the district court's grant of summary judgment *de novo. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 928 (4th Cir.1995). In order to prevail on a summary judgment motion, the moving party must establish the absence of genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party carries that burden, the nonmoving party may not rest on the allegations in his or her pleading. *Id.* at 324, 106 S.Ct. at 2553. The nonmoving party must produce sufficient evidence that demonstrates that a genuine issue exists for trial. *Id.* We view the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

### III.

The SCRUS declares that its purpose "is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liabili-

ty toward persons entering thereon for such purposes." S.C.Code Ann. § 27–3–10 (Law. Co-op.1991). The SCRUS therefore provides that a landowner who opens his property to the public for recreational uses without charge owes the public no duty of care to keep the premises safe or to warn of dangerous conditions on the property. *See* S.C.Code Ann. § 27–3–30 (Law.Co-op.1991). Furthermore, a landowner who permits the public to use his property in such a manner does not thereby extend any assurance that the premises are safe or confer the legal status of an invitee or licensee upon those who enter his property. *See* S.C.Code Ann. § 27–3–40 (Law.Co-op.1991). The SCRUS does not, however, limit the landowner's liability for a grossly negligent, willful, or malicious failure to guard or warn against a dangerous condition. *See* S.C.Code Ann. § 27–3–60 (Law.Co-op.1991).

Kimsey contends that the South Carolina legislature did not intend to limit the liability of state governmental entities such as the City when it passed the SCRUS. In support of her contention, she points out that South Carolina and all of its political subdivisions already enjoyed sovereign immunity when the legislature passed the SCRUS. She further argues that when the legislature later waived sovereign immunity for tort claims in the SCTCA, S.C.Code Ann. §§ 15–78–10 to 15–78–190 (Law.Co-op.Supp.1995), it intended to waive all such immunity and therefore did not intend that governmental entities would enjoy partial immunity under the SCRUS. No court, federal or state, has addressed the applicability of the SCRUS to state governmental entities such as the City.

The statute's language simply provides that the SCRUS applies to "owners" of land who open their property to the public for recreational uses without charge. The SCRUS defines "owner" as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." S.C.Code Ann. § 27–3–20 (Law.Co-op.1991). Thus, the SCRUS does not specifically provide that it applies to governmental landowners as well as private landowners. However, nothing on the face of the SCRUS indicates that the legislature intended to limit its application to private landowners.

Even if we concede for the purposes of argument that the SCRUS is ambiguous as to whether it applies to state governmental entities, the SCTCA resolves all doubt. When the legislature waived sovereign immunity for tort claims in the SCTCA, it clearly provided that governmental entities would henceforth be liable for their torts "in the same manner and to the same extent as a private individual under like circumstances." § 15–78–40. The South Carolina courts similarly have held that plaintiffs may now "recover[ ] against a governmental agency in the same manner as a person or private entity." *Burns v. South Carolina Comm'n for the Blind,* —— S.C. ——, 448 S.E.2d 589, 591 (Ct.App.1994). The courts have further held that state governmental entities are liable only to the extent that a private entity would be liable under the same circumstances. *See id.* Thus, the SCTCA makes it clear that if a private landowner in the same circumstances would not be liable to Kimsey for her injuries pursuant to the SCRUS, the City also would not be liable for such injuries.

■ The District Court for South Carolina previously applied the SCRUS to the federal government in light of very similar language in the Federal Tort Claims Act, 28 U.S.C.A. § 2674 (West 1994), that provides that the United States may be held liable only to the extent that a private entity would be liable under the same circumstances. *See Chrisley v. United States,* 620 F.Supp. 285, 290–93 (D.S.C.1985), *aff'd,* 791 F.2d 165 (4th Cir. 1986). We now hold that the SCRUS applies to state governmental entities as well.

■ In the instant case, the SCRUS limits the City's liability. The City undisputedly owns the beach and the walkover behind the Hotel and thus is an "owner" of the land. Kimsey clearly used the walkover for recreational purposes; she was on vacation and had planned to walk along the beach. Furthermore, the City undisputedly holds the land open to the public, and it does not charge the public for the use of its beaches or walkovers. Pursuant to the SCRUS, therefore, the City owed Kimsey no duty of

care to keep the walkover safe or to warn of any dangerous conditions.

The City's actions do not fall within the exception to the SCRUS. Kimsey failed to introduce any evidence that the City willfully, maliciously, or with gross negligence failed to guard or warn against a dangerous condition on its property. The South Carolina Supreme Court has defined a "willful" act as one "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." *Spartanburg County Dep't of Soc. Servs. v. Padgett,* 296 S.C. 79, 370 S.E.2d 872, 874 (1988) (quoting Black's Law Dictionary 1434 (5th ed.1979)). The Court has similarly defined "malice" as the "deliberate, intentional doing of a wrongful act without just cause or excuse." *Margolis v. Telech,* 239 S.C. 232, 122 S.E.2d 417, 419–20 (1961). The South Carolina courts have not defined those terms in regard to the SCRUS. However, a Georgia court's definition of those terms for the purposes of its recreational use statute provides helpful guidance. In *Georgia Marble Co. v. Warren,* 183 Ga.App. 866, 360 S.E.2d 286, 287 (1987), the court stated:

> [A] wilful failure to guard or warn *would require actual knowledge* of the owner that . . . a condition exists involving an unreasonable risk of death or serious bodily harm; that the condition is not apparent to those using the property; and that *having this knowledge,* the owner chooses not to guard or warn, in disregard of the possible consequences. *This test excludes either constructive knowledge or a duty to inspect.*

(emphasis added) (alteration in original) (quoting *McGruder v. Georgia Power Co.,* 126 Ga.App. 562, 191 S.E.2d 305, 307 (1972), *rev'd on other grounds,* 229 Ga. 811, 194 S.E.2d 440 (1972)).

In the instant case, Kimsey failed to introduce any evidence that the City had actual knowledge of the erosion hazard at the base of the walkover behind the Hotel. The City submitted the affidavit of a City employee who stated that the City's computer complaint records revealed that no complaints had been lodged regarding the walkover behind the Hotel for almost two years prior to Kimsey's fall. Moreover, three of the City's street department employees, who were responsible for maintaining the walkovers, testified in their depositions that they were not aware of any erosion problems at the walkover behind the Hotel on or immediately before June 4, 1993. Kimsey failed to refute any of the City's evidence.

Kimsey contends, however, that the City at least acted with gross negligence. The South Carolina Supreme Court has defined "gross negligence" as the "intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Richardson v. Hambright,* 296 S.C. 504, 374 S.E.2d 296, 298 (1988). The Court further explained that gross negligence connotes the failure to exercise even slight care. *Id.*

Kimsey failed to demonstrate that the City acted with gross negligence. The City's failure to maintain the walkover and its failure to warn of the erosion hazard do not constitute an intentional and conscious failure to act. Steve Moore, the superintendent of the City's street department, testified in his deposition that his employees inspect the walkovers once a week to determine whether the sand has eroded. If they find that erosion has occurred, they bring in more sand. In addition, Moore and one of his employees, James Hucks, testified that the City acts within one or two days when it receives complaints from a homeowner, hotel owner, or vacationer regarding erosion around the steps of a specific walkover. Thus, the City's evidence demonstrates that, at the very least, the City exercised "slight care." Since Kimsey failed to refute any of the City's evidence, she did not meet her burden of proving that the City acted willfully, maliciously, or with gross negligence.

## IV.

Accordingly, we affirm the district court's judgment on the ground that the SCRUS

precludes all of Kimsey's claims.*

*AFFIRMED.*

---

* We do not reach the district court's alternative holdings that various provisions of the SCTCA also preclude Kimsey's claims.