629 S.E.2d 642

Anthony LAW, Vondeste G. Mole, Mark Holmes,
Arthur A. Vaughan, Harry Jenkins, and
Kenneth Green, Appellants,

v.

SOUTH CAROLINA DEPARTMENT OF
CORRECTIONS, Respondent.

No. 26134.

Supreme Court of South Carolina.

Heard Jan. 18, 2006.
Decided April 10, 2006.
Rehearing Denied May 24, 2006.

(2001) (there must be an award of actual or nominal damages for a verdict of punitive damages to be supported).

428

Charles E. Johnson, of Columbia, for Appellants.

Marvin C. Jones and R. Clenten Campbell, both of Bogoslow, Jones, Stephens & Duffie, P.A., of Walterboro, for Respondent.

Justice BURNETT:

Anthony Law, Vondeste Mole, Mark Holmes, Arthur Vaughan, Harry Jenkins, and Kenneth Green (Appellants) appeal the trial court's grant of summary judgment for South Carolina Department of Corrections (Respondent) on their malicious prosecution claims, the trial court's grant of directed

verdict for Respondent on their wrongful termination claims, and the trial court's grant of judgment notwithstanding the verdict (JNOV) for Respondent on their false imprisonment claims. We affirm as modified.

## FACTUAL/PROCEDURAL BACKGROUND

In early 1999, Willie Harrison, an inmate at the Allendale Correctional Institution (Institution), contacted Geraldine Miro, the Institution's warden. Harrison alleged Appellants, who were correctional officers at Institution, were trafficking drugs into and within the Institution. He further alleged Appellants gave him drugs to sell to other inmates and he, in return, gave them money from those drug transactions. Harrison also claimed Appellants would shake him down to collect the monetary proceeds from the drug sales. Miro contacted Al Waters, Director of Internal Affairs for Respondent, who set up an internal investigation and assigned Investigators Melissa Nettles and Joseph Baker to the case.

As part of the internal investigation, Nettles contacted the Greenville County Sheriff's Department to verify Harrison's credibility, and they advised her that Harrison had provided them with reliable information on prior occasions. Nettles and Baker interviewed at least four inmates prior to March 25, 1999, who corroborated Harrison's allegations. At trial, Nettles gave the following examples of information corroborated prior to March 25: inmate Larry David asserted Holmes was his drug supplier; inmate Eckerin Frazier said he received marijuana from Holmes and had paid Holmes over $4,700 from June 1998 to January 1999; Frazier also claimed Law, Holmes, Jenkins, and Green worked together to sell drugs in the Institution; and inmate Terry Fuller said he observed Law and Holmes give drugs to Harrison.

Nettles and Baker interviewed at least thirty-eight inmates at the Institution from March 15, 1999 to April 20, 1999, with at least twenty inmates corroborating Harrison's allegations. Nettles and Baker also searched bank records for Mole and Vaughan which showed large cash deposits and wire transfers during the latter part of 1998 and the early part of 1999.

Nettles testified Harrison told her that Vaughan had purchased a mobile home with the money received from Harrison

through the drug deals. Harrison gave Nettles a specific description of the mobile home, including where Vaughan purchased it and the purchase price. Nettles confirmed these two details. Harrison also picked Vaughan's mobile home from a photo lineup.

Waters testified the senior staff met and decided Nettles and Baker would apply for arrest warrants for Appellants. Nettles testified she assisted in preparing the affidavits and she and Baker gave sworn, oral testimony to support the warrants. She told the magistrate that Harrison's allegations had been corroborated and gave the magistrate the same kind of examples of corroboration that she gave during trial.

On March 25, 1999, Law, Mole, Holmes, Jenkins, and Vaughan were charged with conspiracy to traffic cocaine greater than 100 grams. Law, Holmes, Jenkins, and Vaughan were arrested while at work and were held at the Institution from approximately 6:30 p.m. on March 25 until 2:00 a.m. on March 26, at which time they were transported to the county jail. Mole was also arrested by the Dorchester County Police Department on March 25 while traveling through Dorchester County.

Upon arrest, Holmes admitted he had received $200 from Harrison in exchange for one ounce of marijuana but denied giving Harrison the marijuana. Upon arrest, Law admitted receiving money from Harrison and accused Holmes, Vaughan, Jenkins, and Green of running a drug ring within the Institution. On March 26, 1999, Law and Holmes were charged with misprision of a felony, common law, and acceptance of rebates or extra compensation, and Mole was charged with misprision of a felony, common law.

Green was arrested at work on April 15, 1999 and detained for approximately six to seven hours. He was charged with conspiracy to traffic crack cocaine, greater than 10 grams but less than 28 grams.

Based on the charges and the ongoing investigation, Respondent administratively suspended Appellants effective on the date of their arrests. A review meeting before the warden was scheduled for each Appellant. Respondent sent letters of termination to several Appellants but later rescinded the terminations.

Jenkins and Law voluntarily resigned on March 29, 1999; Green and Holmes voluntarily resigned on April 30, 1999, and May 21, 1999, respectively. None of the Appellants who voluntarily resigned filed a grievance with Respondent, but Green did request a review hearing. Mole was terminated on May 7, 1999, and Vaughan was terminated on May 20, 1999. After his termination, Mole filed a grievance report with Respondent and an investigative review was conducted by Respondent's General Counsel's Office. The Deputy Director of Operations upheld Mole's termination and the Director of Respondent subsequently upheld the termination. Also after his termination, Vaughan filed a grievance.

The indictments against Appellants were *nolle prossed* because "[t]he arresting agency has chosen to pursue these charges in federal court." Nettles and Baker testified after making the arrests they consulted with Solicitor Randolph Murdaugh, who decided to turn the cases over to the Federal Bureau of Investigation (FBI). Nettles and Baker continued to help the FBI with the investigation until the end of their employment with Respondent.

After filing verified claims with Respondent, Appellants individually sued Respondent on February 21, 2001. Each Appellant sued under the South Carolina Tort Claims Act[1] for: (1) civil conspiracy, (2) defamation, (3) false imprisonment, (4) malicious prosecution, and (5) wrongful discharge. Respondent simultaneously filed motions to dismiss and Answers on April 16, 2001.

Appellants' cases were consolidated for trial. Prior to trial, Appellants' causes of actions for defamation and civil conspiracy were dismissed by Appellants' consent. Respondent also moved for summary judgment on all causes of action. The trial judge granted summary judgment on the malicious prosecution claims only.

At the close of Appellants' cases, the trial judge granted a directed verdict for Respondent on the wrongful termination claims. The jury returned a verdict for Appellants on their false imprisonment claims, awarding $25,000 to each Appellant. The trial judge granted Respondent's motion for JNOV.

1. S.C.Code Ann. §§ 15–78–10 to –200 (2005).

This appeal follows, and this Court certified the case for review from the Court of Appeals, pursuant to Rule 204(b), SCACR.

## ISSUES

I. Did the trial court err in granting Respondent's motion for summary judgment on the malicious prosecution claims?

II. Did the trial court err in granting Respondent's motion for directed verdict on the wrongful termination claims?

III. Did the trial court err in granting Respondent's motion for judgment notwithstanding the verdict on the false imprisonment claims?

## STANDARD OF REVIEW

In reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the trial court under Rule 56(c), SCRCP. Under Rule 56, SCRCP, a party is entitled to a judgment as a matter of law if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. In determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all the inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Fleming v. Rose,* 350 S.C. 488, 493–94, 567 S.E.2d 857, 860 (2002); *Conner v. City of Forest Acres,* 348 S.C. 454, 462, 560 S.E.2d 606, 610 (2002).

In ruling on motions for directed verdict and JNOV, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions and to deny the motions where either the evidence yields more than one inference or its inference is in doubt. *Jinks v. Richland County,* 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003). The appellate court will reverse the trial court's ruling on a JNOV motion only when there is no evidence to support the ruling or

where the ruling is controlled by an error of law. *Hinkle v. Nat'l Cas. Ins. Co.*, 354 S.C. 92, 96, 579 S.E.2d 616, 618 (2003).

## *LAW/ANALYSIS*

### I. Summary Judgment on Malicious Prosecution

Appellants argue the trial court erred in granting Respondent's motion for summary judgment on the malicious prosecution claims.[2] We disagree.

 "[T]o maintain an action for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage." *Parrott v. Plowden Motor Co.*, 246 S.C. 318, 321, 143 S.E.2d 607, 608 (1965); *Eaves v. Broad River Elec. Co-op., Inc.*, 277 S.C. 475, 477, 289 S.E.2d 414, 415 (1982). An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause. *Parrott*, 246 S.C. at 322, 143 S.E.2d at 609.

Respondent admitted to the institution of original judicial proceedings by its instance, elements 1 and 2, but contends Appellants did not prove the remaining elements of malicious prosecution.

Appellants contend the trial judged erred in finding the original proceedings had not been sufficiently terminated in their favor. Appellants argue that the criminal proceedings were terminated in their favor because the charges were *nolle prossed*, Respondent has not commenced a federal action, lapse of time, and lack of tangible evidence of the alleged crimes.

 First, Appellants failed to establish a favorable determination of their prior criminal charges. In *McKenney v.*

---

**2.** In support of its motion, Respondent presented the following evidence: affidavits of Nettles, Miro, Elizabeth Stewart, Robin Gracien, and Magistrate Walter Griffin; deposition of Baker; and several internal policies of Respondent. Appellants did not file additional evidence.

*Jack Eckerd Co.*, 304 S.C. 21, 22, 402 S.E.2d 887, 888 (1991), the Court held "where an accused establishes that charges were *nolle prossed* for reasons which imply or are consistent with innocence, an action for malicious prosecution may be maintained." On the underlying charges in the present cases, the reason stated for the *nolle prosse* was that the arresting agency had chosen to pursue the charges in federal court. This reasoning does not imply and is not consistent with Appellants' innocence.

 Second, an essential element of malicious prosecution is the institution of judicial proceedings without probable cause against the plaintiff. *Kinton v. Mobile Home Indus., Inc.*, 274 S.C. 179, 262 S.E.2d 727 (1980). The burden is on the plaintiff to show that the prosecuting person or entity lacked probable cause to pursue a criminal or civil action against him. *Parrott*, 246 S.C. at 322, 143 S.E.2d at 609. Probable cause means "the extent of such facts and circumstances as would excite the belief in a reasonable mind acting on the facts within the knowledge of the prosecutor that the person charged was guilty of a crime for which he has been charged, and only those facts and circumstances which were or should have been known to the prosecutor at the time he instituted the prosecution should be considered." *Id.* In determining the existence of probable cause, the facts must be "regarded from the point of view of the party prosecuting; the question is not what the actual facts were, but what he honestly believed them to be." *Eaves*, 277 S.C. at 478, 289 S.E.2d at 415–16 (citing 54 C.J.S. *Malicious Prosecution* § 20, p. 977). South Carolina has long embraced the rule that a true bill of indictment is prima facie evidence of probable cause in an action for malicious prosecution. *Kinton*, 274 S.C. at 182, 262 S.E.2d at 728. Although the question of whether probable cause exists is ordinarily a jury question, it may be decided as a matter of law when the evidence yields but one conclusion. *Parrott*, 246 S.C. at 323, 143 S.E.2d at 609.

 Appellants were indicted by the Allendale County Grand Jury in September 1999. Prior to the arrests on March 25, 1999, Nettles and Baker interviewed Harrison at least three times and interviewed several other inmates who corroborated Harrison's allegations. Nettles and Baker also

searched bank records of Mole and Vaughan which revealed numerous, large cash deposits and wire transfers during the months prior to the investigation. Viewing the record in the light most favorable to Appellants, Appellants failed to establish a lack of probable cause because the indictments are prima facie evidence of probable cause and because the facts support a finding that Respondent had probable cause to pursue criminal charges.

 Third, Appellants did not establish Respondent's malice in instituting the original proceedings. Malice is defined as "the deliberate intentional doing of an act without just cause or excuse." *Eaves,* 277 S.C. at 479, 289 S.E.2d at 416. Malice does not necessarily mean a defendant acted out of spite, revenge, or with a malignant disposition, although such an attitude certainly may indicate malice. Malice also may proceed from an ill-regulated mind which is not sufficiently cautious before causing injury to another person. Moreover, malice may be implied where the evidence reveals a disregard of the consequences of an injurious act, without reference to any special injury that may be inflicted on another person. Malice also may be implied in the doing of an illegal act for one's own gratification or purpose without regard to the rights of others or the injury which may be inflicted on another person. In an action for malicious prosecution, malice may be inferred from a lack of probable cause to institute the prosecution. *Margolis v. Telech,* 239 S.C. 232, 122 S.E.2d 417, 420 (1961).

 The record reveals Respondent conducted an internal investigation based upon an inmate's allegations that Appellants were trafficking drugs in the Institution. The two primary investigators interviewed Harrison and at least four other inmates prior to the arrests and interviewed no less than 38 inmates at the Institution during the entire investigation. Before completing the investigation, Nettles and Baker discussed the evidence with Waters who thought that arrests should be made based on historical conspiracy. The institution of the original proceedings against Appellants was the result of a thorough investigation, and Appellants failed to establish malice.

We conclude the trial judge properly granted summary judgment for Respondent because Appellants failed to establish termination of the original proceedings in their favor, lack of probable cause, and malice, all elements of malicious prosecution.

## II. Directed Verdict on Wrongful Termination

Appellants argue the trial court erred in ruling they had failed to exhaust their administrative remedies and in granting a directed verdict for Respondent on their wrongful termination claims. We disagree.

The general rule is that administrative remedies must be exhausted absent circumstances excusing application of the general rule. *Hyde v. S.C. Dep't of Mental Health*, 314 S.C. 207, 442 S.E.2d 582 (1994); *Andrews Bearing Corp. v. Brady*, 261 S.C. 533, 201 S.E.2d 241 (1973). "A general exception to the requirement of exhaustion of administrative remedies exists when a party demonstrates that a pursuit of them would be a vain or futile act." *Moore v. Sumter County Council*, 300 S.C. 270, 273–74, 387 S.E.2d 455, 458 (1990) (citing 82 Am.Jur.2d *Zoning and Planning* § 332 at 903 (1976)). Futility, however, must be demonstrated by a showing comparable to the administrative agency taking "a hard and fast position that makes an adverse ruling a certainty." *Thetford Properties IV Ltd. P'ship v. U.S. Dep't of Hous. and Urban Dev.*, 907 F.2d 445, 450 (4th Cir.1990).

The question of whether to require the plaintiff to exhaust administrative remedies is a matter within the sound discretion of the trial judge. *Andrews Bearing Corp.*, 261 S.C. at 536, 201 S.E.2d at 243. A matter within the sound discretion of the trial judge will not be disturbed on appeal absent an abuse of discretion. *Tri–County Ice and Fuel Co. v. Palmetto Ice Co.*, 303 S.C. 237, 242, 399 S.E.2d 779, 782 (1990). "An abuse of discretion occurs where the trial judge was controlled by an error of law or where his order is based on factual conclusions that are without evidentiary support." *Id.*

Respondent, as a state agency, is governed by the State Employee Grievance Procedure Act, S.C.Code Ann. §§ 8–17–

310 through 380 (1996 & Supp.2005). Section 8–17–330 provides in pertinent part:

Each agency shall establish an agency employee grievance procedure....A covered employee who wishes to appeal the decision of the agency grievance procedure to the State Human Resources Director shall file an appeal within ten calendar days of receipt of the decision from the agency head or his designee or within fifty-five calendar days after the employee files the grievance with the agency, whichever occurs later. The covered employee or the employee's representative shall file the request in writing with the State Human Resources Director. Failure to file an appeal with the State Human Resources Director within ten calendar days of the agency's final decision or fifty-five calendar days from the initial grievance, whichever occurs later, constitutes a waiver of the right to appeal.... As used in this article, a covered employee may file a grievance or appeal concerning the following adverse employment actions: terminations, suspensions, involuntary reassignments, and demotions....A covered employee has the right to appeal to the State Human Resources Director an adverse employment action involving the issues specified in this section after all administrative remedies to secure relief within the agency have been exhausted.

Appellants contend the trial court misinterpreted the State Employee Grievance Procedure Act as requiring an employee to appeal to the State Human Resources Director upon an adverse ruling by the agency hearing the appeal. Appellants argue the statute uses permissive language regarding the appeal to the State Human Resources Director.

Appellants further argue the general rule of exhaustion of administrative remedies is inapplicable to them because they have demonstrated the pursuit of such remedies would have been vain or futile. Specifically, Appellant Mole's appeal was denied by the Director of Respondent; therefore his attempt was futile and because all Appellants were similarly situated, their attempts would have been futile.

Appellants Law, Holmes, Jenkins, and Green voluntarily resigned. Therefore, we affirm the directed verdict for Respondent on their wrongful termination claims because

they failed to state a cause of action.[3] *See Troutman v. Facetglas, Inc.*, 281 S.C. 598, 316 S.E.2d 424 (Ct.App.1984) (former employee who resigned under alleged threat to fire him did not state a cause of action for wrongful discharge).

Appellants Mole and Vaughan were terminated because conspiracy to traffic crack cocaine violated Respondent's internal policy regarding employee behavior. Appellants had a grievable action under the State Employee Grievance Procedure Act which they voluntarily did not appeal.[4] Failure to file an appeal with the State Human Resources Director within the statutory time period constitutes a waiver of the right to appeal. *See* S.C.Code Ann. § 8–17–330. Furthermore, if Appellants were concerned of bias during the Respondent's appellate process because Respondent sought the charges, then an appeal to the State Human Resources Director, who was outside the agency, should have allayed any concerns of bias. The trial judge correctly determined their wrongful termination claims were foreclosed under the State Employee Grievance Procedure Act because they did not exhaust their administrative remedies.

### III. JNOV on False Imprisonment

Appellants argue the trial judge erred in granting Respondent's motion for JNOV on the false imprisonment claims. We disagree.

The essence of the tort of false imprisonment consists of depriving a person of his liberty without lawful justification. *Jones v. City of Columbia*, 301 S.C. 62, 389 S.E.2d 662 (1990); *Thomas v. Colonial Stores, Inc.*, 236 S.C. 95, 113 S.E.2d 337 (1960). To prevail on a claim for false imprisonment, the plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful. *Gist v. Berkeley County Sheriff's Dep't*, 336 S.C. 611, 521 S.E.2d 163 (Ct.App.1999);

---

3. This court may affirm the trial court based on any ground found in the record. Rule 220(c), SCACR; *I'On, LLC v. Town of Mount Pleasant*, 338 S.C. 406, 418, 526 S.E.2d 716, 722 (2000).

4. *See* S.C.Code Ann. §§ 8–17–320(7), –330 (defining "grievance" to include dismissal from employment).

*Jones by Robinson v. Winn–Dixie Greenville, Inc.*, 318 S.C. 171, 456 S.E.2d 429 (Ct.App.1995); *Caldwell v. K–Mart Corp.*, 306 S.C. 27, 410 S.E.2d 21 (Ct.App.1991); *see also Jones*, 301 S.C. at 64, 389 S.E.2d at 663 (an action for false imprisonment cannot be maintained where one is arrested by lawful authority).

■■■■■■ The fundamental issue in determining the lawfulness of an arrest is whether there was probable cause to make the arrest. *Gist*, 336 S.C. at 615, 521 S.E.2d at 165. Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise. *Jones v. City of Columbia*, 301 S.C. at 65, 389 S.E.2d at 663. Although the question of whether probable cause exists is ordinarily a jury question, it may be decided as a matter of law when the evidence yields but one conclusion. *Parrott*, 246 S.C. at 323, 143 S.E.2d at 609.

■■■■ "All proceedings before magistrates in criminal cases shall be commenced on information under oath, plainly and substantially setting forth the offense charged, upon which, and only which, shall a warrant of arrest issue." S.C.Code Ann. § 22–3–710 (1989). A warrant affidavit that is "insufficient in itself to establish probable cause may be supplemented before a magistrate by sworn oral testimony." *State v. Crane*, 296 S.C. 336, 338, 372 S.E.2d 587, 588 (1988).

Because Respondent admitted the first and second elements, the determinative issue is whether probable cause to make the arrests existed.

Appellants assert their situation is similar to *Gist*. Gist sued the Berkeley County Sheriff's Department for false arrest and false imprisonment. The sheriff's department conceded the affidavit supporting the warrant for Gist's arrest did not establish probable cause, but relied on the investigating officer's testimony that he orally told the judge information that was not referenced in the affidavit to establish probable cause. However, the record did not contain any evidence as to whether the affidavit was accompanied by sworn, oral testimony before the judge. The Court of Appeals reversed and remanded the trial court's grant of summary judgment for the

sheriff's department. The court found viewing the evidence in the light most favorable to Gist, a genuine issue of material fact existed as to whether the judge was presented sworn, oral testimony concerning a photographic lineup when the probable cause determination was made. *Gist,* 336 S.C. at 615–17, 521 S.E.2d at 165–66.

 In the present case, the magistrate, who issued the arrest warrants, testified he routinely conducted an oral report, under oath, in addition to the affidavits presented to him before making a probable cause determination. Nettles testified she and Baker gave sworn, oral testimony to the magistrate, which included examples of corroboration of Harrison's allegations.[5]

The present situation is distinguishable from *Gist* because the record contains evidence the affidavits were supplemented with sworn, oral testimony. The facts known to the magistrate at the time of the probable cause determination included information from the affidavits [6] and from sworn, oral testimo-

---

5. At trial, Nettles testified as follows:

Q: And did you give sworn testimony to?
A: Yes, sir, both myself and Officer Baker or Investigator Baker did.
Q: And did you tell [the magistrate] essentially the same things that you told the Court here today?
A: Yes, sir, I told [the magistrate] essentially what is written on the affidavits of each warrant, yes, sir.
Q: Did you tell him about the corroboration of Mr. Harrison?
A: Yes, sir.
Q: And give him the same kinds of examples that you've given us here today?
A: Yes, sir, I did.

6. For example, the affidavit supporting the warrant for Law provides:

That between May 1997 thru March 25, 1999 while at Allendale Correctional Institution located in Allendale County South Carolina, the defendant Anthony F. Law, did violate statute 44–53–375 of the South Carolina Code of Laws, 1976 as amended, Conspiracy To Traffic Crack Cocaine Greater Than 100 Grams. In that the defendant did willfully, unlawfully, and feloniously conspire with Harry Jenkins, Mark Holmes, Vondeste Mole, and Arthur Vaughan, to Traffic Crack Cocaine Greater Than 100 Grams with a Confidential Reliable Informant (CRI) at the Allendale Correctional Institution during the period of May 1997 thru March 25, 1999. A statement was provided by the Confidential Reliable Informant which has been determined factual through corroboration of the facts. Investigators Joseph Baker and Melissa [Nettles] are

ny. We conclude, as a matter of law, the facts known to the magistrate "would induce an ordinarily prudent and cautious man, under the circumstances, to believe" that Appellants had committed the offenses. *Jones*, 301 S.C. at 65, 389 S.E.2d at 663. The trial judge correctly granted Respondent's JNOV because Appellants failed to establish the restraint was unlawful.

## *CONCLUSION*

We affirm the trial court's grant of Respondent's motions for summary judgment on the malicious prosecution claims and for JNOV on the false imprisonment claims. We affirm as modified the directed verdict for Respondent on the wrongful termination claims.

**AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, J., and Acting Justice CLYDE N. DAVIS, JR., concur.

PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Justice PLEICONES concurring in part and dissenting in part:

I concur in part and dissent in part. I agree with the majority opinion that the grant of summary judgment on the malicious-prosecution claims and the directed verdict on the wrongful-termination claims should be affirmed. I respectfully dissent from the affirmance of JNOV on the false-imprisonment claims, because the evidence in the record yields at least one inference that supports the jury's verdict. *See Strange v. S.C. Dep't of Highways and Pub. Transp.*, 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994) (providing the standard for ruling on motions for JNOV).

The lawful-authority determination here turns on whether the insufficient warrant affidavits were sufficiently supplemented by sworn oral testimony pursuant to *State v. Crane*, 296 S.C. 336, 338, 372 S.E.2d 587, 588 (1988). If so, then the warrants were valid and lawful authority to arrest was present. If not, then the warrants were not issued pursuant to

---

witnesses to prove the same. All of which are against the Law, Peace, and Dignity of the State of South Carolina.

legal process, and lawful authority to arrest was absent. The relevant evidence is the trial testimony of the magistrate and the trial testimony of Investigator Nettles. As stated in the majority opinion, "the magistrate, who issued the arrest warrants, testified he routinely conducted an oral report, under oath, in addition to the affidavits presented to him before making a probable cause determination. Nettles testified she and Baker gave sworn, oral testimony to the magistrate, which included examples of corroboration of Harrison's allegations." The majority holds that this trial testimony proves the warrant affidavits were orally supplemented. In so holding, the majority necessarily passes on the credibility of witness. I disagree with the holding because it was within the jury's province to believe or disbelieve this trial testimony. *See Curcio v. Caterpillar, Inc.*, 355 S.C. 316, 585 S.E.2d 272 (2003) (holding that "[w]hen considering a JNOV, neither an appellate court, nor the trial court has authority to decide credibility issues or to resolve conflicts in the testimony or the evidence") (internal quotation omitted). In my opinion, the evidence yields at least one reasonable inference that the warrant affidavits were not orally supplemented. That inference supports a conclusion that the warrants were not issued pursuant to legal process and that lawful authority was therefore absent. Consequently, I would reverse the grant of JNOV and reinstate the jury's verdict on Appellants' false-imprisonment claims.