668 S.E.2d 803

**Eric U. FOWLER and Melissa W. Dawn Fowler, Appellants/Respondents,**

**v.**

**Sallie HUNTER, Gynecologic Oncology Associates, Selective Insurance Company of South Carolina, and Insurance Associates, Inc., Defendants,**

**Of whom Selective Insurance Company of South Carolina is Respondent/Appellant,**

**and**

**Insurance Associates, Inc. is Respondent.**

No. 4422.

Court of Appeals of South Carolina.

Oct. 28, 2008.

Heard June 4, 2008.

Decided July 8, 2008.

Withdrawn, Substituted and Refiled July 30, 2008.

Withdrawn, Substituted and Refiled Oct. 28, 2008.

Rodney M. Brown, of Fountain Inn, for Appellant/Respondents.

Andrew F. Lindemann, of Columbia, for Respondent/Appellant.

E. Matlock Elliott and Joshua L. Howard, of Greenville, for Respondent.

KONDUROS, J.:

Eric and Melissa Fowler ("the Fowlers") appeal the dismissal of their assigned cause of action for professional negligence against Insurance Associates, Inc. ("Insurance Associates"). Selective Insurance Company of South Carolina, Inc. ("Selec-

tive") appeals the dismissal of its cross-claim for equitable indemnification against Insurance Associates. We reverse.

## FACTS

The Fowlers were seriously injured when the motorcycle they were riding was struck by a car driven by Sallie Hunter. The car was owned by Gynecologic Oncology Associates ("GOA") for use by Mrs. Hunter's husband, Dr. James Hunter. Auto–Owners Insurance Company insured the car under a business automobile policy with limits of one million dollars. At least two other policies potentially provided coverage. One was a commercial umbrella policy for four million dollars procured by GOA through Insurance Associates and issued by Selective. The other policy at issue was a personal catastrophic liability policy for two million dollars carried by the Hunters and also issued by Selective.

The Fowlers filed suit against Mrs. Hunter, and it was discovered that due to an inadvertent computer error by Insurance Associates, GOA's umbrella policy did not provide automobile liability coverage. The Fowlers then filed a declaratory judgment action to see what coverage was available under the above-referenced policies. The Hunters and GOA answered and filed cross-claims against Selective for reformation and against Insurance Associates for professional negligence. Additionally, Selective filed a cross-claim against Insurance Associates for indemnity.

Eventually, the parties settled many of the claims in the two lawsuits. The Fowlers received one million dollars from GOA's automobile policy, two million dollars from the Hunter's personal umbrella policy, and an additional one and one-half million dollars from Selective. Additionally, the Hunters and GOA assigned their professional negligence claim against Insurance Associates to the Fowlers, and the Fowlers signed a covenant not to execute against the Hunters and GOA. The Hunters and GOA agreed to cooperate with the Fowlers in the prosecution of the professional negligence claim, and the Fowlers and Selective agreed to split equally any recovery from either the professional negligence or indemnification claim.

Insurance Associates filed a summary judgment motion seeking dismissal of the only remaining claims: the profes-

sional negligence claim assigned to the Fowlers and Selective's claim for indemnification. The circuit court granted these motions finding that because neither the Hunters, GOA, nor Selective could prove they were damaged by Insurance Associate's negligence, the claims failed. These appeals followed.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, this court applies the same standard of review as the trial court under Rule 56, SCRCP. *Cowburn v. Leventis,* 366 S.C. 20, 30, 619 S.E.2d 437, 443 (Ct.App.2005). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP. To determine whether any triable issues of fact exist, the reviewing court must consider the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Law v. S.C. Dep't of Corrs.,* 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). However, when a party has moved for summary judgment the opposing party may not rest upon the mere allegations or denials of his pleading to defeat it. Rule 56(e), SCRCP. Rather, the non-moving party must set forth specific facts demonstrating to the court there is a genuine issue for trial. *Id.*

## LAW/ANALYSIS

### I. Professional Negligence

The Fowlers argue the circuit court erred in granting summary judgment to Insurance Associates as to their assigned claim for professional negligence. We agree.

The circuit court reasoned because the Hunters and GOA were insulated from execution of any judgment, the Fowlers, standing in the Hunter's shoes, could never prove damages flowing from the negligence of Insurance Associates. While this analysis is technically correct, the majority of courts having addressed this issue have elected to allow such an assigned claim to proceed. We are persuaded by the rationale set forth in those cases.

In *Campione v. Wilson,* 422 Mass. 185, 661 N.E.2d 658, 660–61 (1996), an injured party settled with an insurer and insured for a stipulated amount of damages and a release of the insured. The Massachusetts Supreme Court determined that even though the settlement included a release, the injured party could proceed in prosecuting the insured's assigned negligence claim against the insurance brokers. *Id.* at 663. The court considered the competing policy considerations at play under these circumstances noting there is a risk of collusion between the settling parties even though there is benefit to allowing injured parties and tortfeasors to settle claims. *Id.* at 662–63. Nevertheless, the court rejected the " 'somewhat metaphysical contention' that the legal basis for the claim against the insurer [and broker] disappeared when the insured became insulated from liability due to a release or a covenant not to execute." *Id.* at 662 (quoting *Gray v. Grain Dealers Mut. Ins. Co.,* 871 F.2d 1128, 1132–33 (D.C.Cir.1989)).

An examination of other jurisdictions reveals most courts are approving of settlement arrangements similar to the one in this case, so long as the risk of collusion is minimized. *See Gray,* 871 F.2d at 1133 (applying North Carolina law and allowing injured party to pursue assigned bad faith claim against insurer even though insured was insulated from liability by release); *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997, 999 (1969) (holding an assignment of the insured's bad faith claim plus a covenant not to execute was not *ipso facto* collusive); *United Servs. Auto. Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246, 254 (1987) (holding settlement between insured and claimant in which insurer was to defend under reservation of rights did not violate policy's cooperation clause); *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524, 532–33 (Iowa 1995) (holding insured could still suffer damages from agent's negligence when settlement was coupled with a covenant not to execute that did not extinguish liability as would a release; therefore, assigned claim for agent's negligence would be valid); *Glenn v. Fleming,* 247 Kan. 296, 799 P.2d 79, 92–93 (1990) (approving of a settlement between insured and injured party coupled with an assignment of a prejudgment claim and covenant not to execute when the settlement is entered into in good faith and the settlement amount is shown to be reasonable).

South Carolina has shown a willingness to depart from the common law in order to promote reasonable settlements between tortfeasors and injured parties. In *Bartholomew v. McCartha,* 255 S.C. 489, 179 S.E.2d 912 (1971), our Supreme Court concluded the common-law rule regarding the release of one joint tortfeasor was not in the best interests of justice.

> Being untrammeled by the ancient rule which, in our view, tends to stifle settlements, defeat the intention of parties and extol technicality, we adopt the view that the release of one tort-feasor does not release others who wrongfully contributed to plaintiff's injuries unless this was the intention of the parties, or unless plaintiff has, in fact, received full compensation amounting to a satisfaction.

*Id.* at 492, 179 S.E.2d at 914.

While acknowledging the inherent benefits of settlement, we also note South Carolina promotes the careful examination of settlement agreements to avoid the potential for complicity or wrongdoing.

> We are cognizant that litigants are free to devise a settlement agreement in any manner that does not contravene public policy or the law. In fact, this Court encourages such compromise agreements because they avoid costly litigation and delay to an injured party. However, these settlement agreements must be carefully scrutinized in order to determine their efficiency and impact upon the integrity of the judicial process.

*Ecclesiastes Prod. Ministries v. Outparcel Assocs.,* 374 S.C. 483, 493, 649 S.E.2d 494, 499 (Ct.App.2007) (quoting *Poston by Poston v. Barnes,* 294 S.C. 261, 263–64, 363 S.E.2d 888, 889–90 (1987)).

In the instant case, there is no evidence of collusion between the settling parties. The injuries suffered in the case were extremely serious. Furthermore, the parties did not put a stipulated amount of damages in their agreement so as to reduce the appearance of collusion, and because they contemplated that the underlying tort claim would be tried to a conclusion.[1] The result of the settlement was the Fowlers

---

1. The Fowlers and Selective argued to the circuit court if a judgment in excess of the policy limits was required prior to determining the summary judgment motions, the motion hearing should be stayed and

were able to procure the three million dollars available under the other insurance policies in which coverage was not disputed, while litigation against a negligent party, Insurance Associates, was not foreclosed.[2]  This was clearly the intent of the parties as shown by the express language of the settlement agreement and covenant not to execute.  The catastrophic injuries suffered by the Fowlers begged a resolution that would give them the benefit of the uncontested proceeds promptly.  In light of our State's willingness to place the interests of the injured party above such a technical application of the law, we believe it was inappropriate for the claim to be dismissed at the summary judgment stage.  We therefore reverse the circuit court's grant of summary judgment in favor of Insurance Associates.

## II.  Equitable Indemnification

■  Selective contends the circuit court erred in granting summary judgment in favor of Insurance Associates regarding Selective's cross-claim for equitable indemnification.  We agree.

■  Under South Carolina law, a party seeking equitable indemnification must show three things: "(1) the indemnitor was liable for causing the Plaintiff's damages;  (2) the indemnitee was exonerated from any liability for those damages;  and (3) the indemnitee suffered damages as a result of the Plaintiff's claims against it which were eventually proven to be the fault of the indemnitor." *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.*, 336 S.C. 53, 63, 518 S.E.2d 301, 307 (Ct.App.1999).

Under the settlement, the Fowlers received one and one-half million dollars from Selective that was not directly traceable to any policy.  The circuit court determined Selective

the underlying tort claim tried.  However, the circuit court elected to proceed with ruling on summary judgment motions.

**2.**  The overall settlement received was four and one-half million dollars.  However, as discussed further below, Selective contends one and one-half million dollars of the settlement was not payment from any particular policy.

admitted liability under the commercial umbrella policy by making this payment. If so, Selective actually benefited from the negligence of Insurance Associates. Had the automobile liability not been inadvertently excluded under the policy, the defendants' potential exposure would have been the full amount of the policy limits amounting to four million dollars.

Selective offered an alternative explanation for the one and one-half million dollar payment. Selective contends the payment was made as part of a global settlement to avoid a professional negligence claim asserted by the Hunters and GOA. Insurance Associates admitted its negligence in failing to request automobile coverage on the umbrella policy. If Insurance Associates was acting as an agent for Selective, Selective could be vicariously liable for that negligence. Consequently, Selective argues it settled that claim for one and one-half million dollars, paid to the Fowlers, and decided to pursue indemnification from Insurance Associates. We find Selective's position raises a question regarding the indemnification claim, but only if we can conclude Selective would not have issued the policy had the application been correctly submitted. In other words, if Selective would have issued the policy anyway, it was not damaged by Insurance Associates' negligence as it would have been exposed for the full four million dollars.

As the moving party, Insurance Associates relied upon the deposition testimony of Roy Phillips indicating that Selective would have definitely issued the policy had it been submitted correctly to include automobile coverage. Insurance Associates also submitted a set of guidelines related to the "one and done" computer software program that allowed "agents" to automatically secure policies if certain criteria are met. In response, Selective submitted guidelines produced by Insurance Associates during discovery showing that a policy would not automatically be secured unless the underlying policy was also issued by Selective. In this case, the underlying policy was not issued by Selective, but by Auto–Owners.

We conclude the competing sets of guidelines raise a genuine issue of material fact precluding summary judgment.

Further inquiry into the facts may show Selective would not have issued the policy without the automobile exclusion. If so, Selective's claim for indemnification as to the one and one-half million dollar settlement may prove viable. If Selective cannot produce such evidence, the claim will likely fail. However, we find the issue presented was too uncertain at this stage for the grant of summary judgment to be appropriate.

■ Finally, Insurance Associates contends Selective failed to mitigate its damages, barring its indemnification claim, by entering into the global settlement and not litigating coverage under the commercial umbrella policy. We disagree.

While Selective may have a viable coverage defense as to the Hunter's professional negligence claim, that defense was not a certainty. Had they not settled, Selective could have been found responsible for the full four million dollars contemplated under the policy. By settling, Selective made a calculated decision to minimize its own risk. Furthermore, this mitigated the potential damages Selective can seek via indemnification from Insurance Associates.

## CONCLUSION

We are persuaded settlements like the one in this case are favorable, so long as the risk of collusion is minimized. Therefore, we conclude the grant of summary judgment in favor of Insurance Associates should be reversed. Furthermore, we believe the existence of the competing guidelines created a genuine issue of fact regarding Selective's claim for indemnification making the grant of summary judgment inappropriate. Consequently, the decision of the circuit court is

**REVERSED.**

HEARN, C.J., and SHORT, J., concur.