**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 15-1198**

———————

KENNETH MICHAEL BARFIELD,

                Plaintiff - Appellant,

      v.

KERSHAW COUNTY SHERIFF'S OFFICE; AARON THREATT,

                Defendants - Appellees.

———————

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Terry L. Wooten, District Judge. (3:13-cv-03569-TLW)

———————

Submitted:  July 14, 2015        Decided:  January 7, 2016

———————

Before MOTZ, KEENAN, and DIAZ, Circuit Judges.

———————

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

———————

Joshua S. Kendrick, KENDRICK & LEONARD, P.C., Greenville, South Carolina, for Appellant.  H. Thomas Morgan, Jr., DUPOSE-ROBINSON, PC, Camden, South Carolina, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kenneth Michael Barfield appeals the district court's grant of summary judgment in favor of the municipal defendants, Deputy Aaron Threatt and the Kershaw County Sheriff's Office. For the following reasons, we affirm the district court's grant of summary judgment on Barfield's claims for illegal seizure and false imprisonment, in violation of 42 U.S.C. § 1983 and the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. § 15-78-10 et seq., respectively, but reverse the grant of summary judgment on his claims for excessive force and battery, in violation of 42 U.S.C § 1983 and the SCTCA, respectively. We remand those claims for trial.

I.

A.

There is no love lost between Kenneth Michael Barfield and his neighbors, the Kellys, who have a nine-year history of filing complaints against one another with the local police in Kershaw County, South Carolina. On November 26, 2011, Ms. Kelly called Kershaw County 911 dispatch, complaining that Barfield was making loud noises in his yard. Aaron Threatt, a deputy with Kershaw County Sheriff's Office ("KCSO," and together with Threatt, "Appellees"), responded to the scene. Upon arrival, Threatt spoke with Kelly. She told him Barfield was disturbing

2

her household by "yelling and cussing, raising cane." J.A. 97. Threatt did not see or hear Barfield yelling, but he remained in the area to investigate further. Finding no disturbance, Threatt left.

Later that evening, Kelly again called 911 dispatch and spoke with Threatt directly. She complained that Barfield was making loud noises in his yard and disturbing her household. Threatt drove his patrol car toward Barfield's home and approached with his lights off and windows down. He parked his patrol car a few hundred yards away from the home, near the end of Barfield's driveway, and turned off the ignition. Threatt and Barfield offer different accounts of what happened next.

According to Threatt, he heard someone yelling in Barfield's backyard[1] and thought he recognized the voice as Barfield's. Threatt drove closer to the Barfield residence, got out of his car, and walked around the property, knocking on the house's doors and windows in an attempt to locate Barfield. While walking the property, Threatt requested that central dispatch call Barfield's home. When Barfield exited his home, Threatt observed he had blood-shot eyes and was fully dressed,

---

[1] The "back" of the Barfield home faces the street so that the backyard stood between Threatt's patrol car and the house, and the "front" of the Barfield home faces the opposite direction, overlooking a pond. There is a shed-like structure that sits between the house and the street in the backyard, which obstructed Threatt's view.

3

slurring his speech, and smelling of alcohol. Threatt arrested Barfield for disorderly conduct. Threatt handcuffed Barfield, who then refused to get in the patrol car. At some point, Barfield fell to the ground and complained of chest pain. Threatt called for paramedics, who checked Barfield's vital signs and found them to be normal. When asked if he wanted to go to the hospital for medical treatment, Barfield refused. Threatt subsequently put Barfield in handcuffs using two sets, which makes it more comfortable for the restrained person. Threatt double locked the cuffs so they would not get tighter around Barfield's wrists and checked the cuffs for fit. He then transported Barfield to the Kershaw County Detention Center. After removing the handcuffs at the detention center, Threatt observed some redness on Barfield's wrist area but no blood or bruising.

Barfield tells a different story. He contends that he went to sleep late that night and was awakened by "[s]omeone beat[ing] about [his] house." J.A. 109. The phone rang shortly thereafter, and Barfield's wife answered. The caller, Barfield's father, told her the police had called his home and asked him to step outside, but when he went outside no one was there. In the meantime, Barfield walked through the house to investigate the source of the commotion. Barfield eventually stepped out onto his wrap-around porch, wearing shorts and a t-

4

shirt, and walked through the porch toward Threatt's patrol car. He stepped off the porch, and while he was walking toward the vehicle, he was "bulldogged from behind"[2] by Threatt. Id. at 111. Barfield characterizes the encounter as "violent." Appellant's Br. 13–14. His wife corroborates his version of the events and testified that Threatt came out from behind a tree beside the Barfields' porch and "hit [Barfield] like a football player." J.A. 121.

B.

Barfield was tried in state court on the disorderly conduct offense, but the judge dismissed the case, finding that because Threatt did not observe Barfield yelling in the yard, Threatt lacked proper grounds to make a warrantless arrest.

Barfield then filed a complaint in the Kershaw County Court of Common Pleas alleging three causes of action under 42 U.S.C. § 1983 against Threatt and KCSO, including illegal seizure, excessive force, and failure to provide necessary medical attention. Barfield also alleged common law claims for battery, false imprisonment, and negligent hiring and retention against KCSO under the South Carolina Tort Claims Act ("SCTCA"), S.C.

---

[2] "Bulldogging" is a rodeo term, meaning "to throw (a steer) by seizing the horns and twisting the neck." Bulldog, Merriam-Webster Dictionary (2015), http://www.merriam-webster.com/dictionary/bulldog (saved as ECF opinion attachment). We understand Barfield to mean that Threatt tackled him to the ground. See J.A. 87.

5

Code Ann. § 15-78-10 et seq. Appellees removed the case to federal court.

In the district court, Barfield entered a stipulation dismissing all claims against KCSO except for the SCTCA battery and false imprisonment claims, and all claims against Threatt except for the § 1983 illegal seizure and excessive force claims. Appellees moved for summary judgment on all claims, with Threatt asserting qualified immunity and KCSO asserting sovereign immunity.

The magistrate judge issued a Report and Recommendation recommending the grant of summary judgment on all claims. With respect to the § 1983 illegal seizure and SCTCA false imprisonment claims, the magistrate judge found (1) Threatt had probable cause to make a warrantless arrest of Barfield, (2) Barfield did not proffer evidence of unnecessary force, and (3) there was no genuine dispute as to any material fact. More specifically, the magistrate judge found Barfield did not present evidence to dispute that Threatt heard someone he believed to be Barfield yelling from the Barfield property. Thus, even if Barfield had not been yelling, the facts and circumstances within Threatt's knowledge—the Kelly complaint and a yelling voice that sounded like Barfield—were sufficient to support Threatt's decision to arrest Barfield for disorderly conduct.

6

Regarding the § 1983 excessive force and SCTCA battery claims, the magistrate judge found that Threatt used reasonable force in effecting Barfield's arrest and, therefore, that KCSO was not liable for battery under the SCTCA. The judge rejected KCSO's sovereign immunity defense, and finding no constitutional injury, it did not further address Threatt's qualified immunity defense. Taking Barfield's version of the facts as true, the magistrate judge found the record was devoid of evidence that tackling Barfield was unreasonable given that Threatt and central dispatch unsuccessfully tried to contact Barfield and that when Threatt saw Barfield, Barfield was fully dressed and walking toward the patrol car. Because Barfield refused medical treatment and the EMS response showed Barfield's vitals were normal, the magistrate judge concluded Barfield suffered minimal, if any, injury. Thus, the judge found insufficient evidence for a reasonable juror to conclude Threatt used excessive force, and finding no unlawful force, the judge found Barfield could not maintain his battery claim and recommended the grant of summary judgment in favor of of Appellees.

Barfield objected to the magistrate judge's findings, and Appellees filed no objections. Primarily, Barfield argued the judge did not construe the facts and all permissible inferences in his favor. The district court, however, found the magistrate judge's legal analysis and conclusions "accurate[]," accepted

7

the Report and Recommendation and adopted its reasoning, overruled Barfield's objections, and granted summary judgment in favor of Appellees. Additionally, the district court acknowledged there was a factual dispute as to whether Barfield was yelling outside of his home, but concluded that the dispute was relevant only to Barfield's guilt or innocence—not to whether Threatt had probable cause for the arrest.

This appeal followed.


## II.

We review a grant of summary judgment de novo. Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 (4th Cir. 2014). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a summary judgment motion, we take as true all of the nonmovant's evidence and draw all justifiable inferences in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Thus, the defense "protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011).

To determine whether an officer is entitled to summary judgment on the basis of qualified immunity, we follow a two-step inquiry. It is within the court's discretion to decide which of the two prongs should be addressed first. Pearson, 555 U.S. at 236; Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015) (providing the court may address the analysis "in 'the order . . . that will best facilitate the fair and efficient disposition of each case" (alteration in original) (quoting Pearson, 555 U.S. at 242)). In light of the circumstances here, we follow the bifurcated procedure announced in Saucier v. Katz: First we decide whether the facts alleged, when viewed in the light most favorable to the party asserting injury, show the officer's conduct violated a constitutional right; if so, we then determine whether the right was clearly established at the

9

time of the violation "such that a reasonable person would have known that his conduct was unconstitutional," Smith, 781 F.3d at 100. 533 U.S. 194, 201 (2001). Barfield's § 1983 claims survive summary judgment only if we answer both questions in the affirmative. See Pearson, 555 U.S. at 232.

III.

A.

We may resolve Barfield's § 1983 and SCTCA claims for illegal seizure and false imprisonment together. First we decide whether Barfield's § 1983 allegations establish a constitutional injury. Under the Fourth Amendment, the people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause." U.S. Const., amdt. IV. "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004); see also United States v. Johnson, 599 F.3d 339, 346 (4th Cir. 2010). The same is true under South Carolina law. See Cahaly v. Larosa, 796 F.3d 399, 409 (4th Cir. 2015) (rejecting a false imprisonment claim and holding "[t]he fundamental issue in determining the lawfulness of an arrest is

10

whether there was probable cause to make the arrest" (quoting _Law v. S.C. Dep't of Corr._, 629 S.E.2d 642, 651 (S.C. 2006))). The standard for probable cause is objective; it exists when "at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." _Johnson_, 599 F.3d at 346 (quoting _United States v. Manbeck_, 744 F.2d 360, 376 (4th Cir. 1984)); _see also_ _Jones v. City of Columbia_, 389 S.E.2d 662, 663 (S.C. 1990).

The district court properly found no Fourth Amendment violation and no genuine dispute of _material_ fact presenting an issue for trial. The factual dispute here—whether Threatt heard Barfield yelling in his yard—is relevant only to Barfield's guilt or innocence on the disorderly conduct offense. Taking Barfield's version of the facts as true, and construing all permissible inferences in his favor, Barfield did not present any evidence to dispute probable cause. The fact that, as the Barfields contend, they were asleep when Threatt believed he heard Barfield yelling, does not give rise to the reasonable inference that _no one_ was yelling. Barfield has never maintained, until this appeal, that there was no one yelling. Moreover, he cannot argue both that he was asleep and also that he heard no yelling. Thus, even assuming Barfield was not yelling, Threatt had probable cause to make a warrantless

11

arrest: at the time of the arrest, Threatt knew Barfield was alleged to have been yelling in his backyard and Threatt claims to have heard yelling in Barfield's backyard. Threatt also believed, based on prior interactions, the yelling voice belonged to Barfield. Together, this knowledge warranted Threatt's objectively reasonable belief that Barfield was breaching the peace, making the warrantless arrest lawful. Appellees were therefore entitled to summary judgment as a matter of law on Barfield's § 1983 and SCTCA claims for illegal seizure and false imprisonment.[3]

B.

We may similarly resolve Barfield's § 1983 and SCTCA claims for excessive force and battery together. When an excessive force claim arises in the context of an arrest, we analyze whether the force used to effect the seizure was reasonable under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 394-95 (1989). Here, too, the reasonableness inquiry is objective: "the question is whether the officer[]'[s] actions are 'objectively reasonable' in light of the facts and circumstances confronting [him]." Id. at 397. The Supreme

---

[3] Because we find that the facts alleged, if proven, do not show that Threatt violated Barfield's Fourth Amendment rights, we do not reach the second prong of the qualified immunity inquiry on the illegal seizure claim. Abney v. Coe, 493 F.3d 412, 415 (4th Cir. 2007) ("If [an officer] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there.").

Court in Graham instructed courts to consider the following factors when analyzing the reasonableness of the force applied: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officer[]," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. The officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Wilson v. Flynn, 429 F.3d 465, 468 (4th Cir. 2005) (quoting Graham, 490 U.S. at 396). "Ultimately, the question to be decided is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." Smith, 781 F.3d at 101 (alteration and omission in original) (quoting Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)).

Under South Carolina law, battery is defined as the "actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree." Jones v. Winn-Dixie Greenville, Inc., 456 S.E.2d 429, 432 (S.C. Ct. App. 1995). Moreover, when a Sheriff's deputy uses "force greater than is reasonably necessary under the circumstances" the governmental agency may be liable for battery. See Roberts v. City of Forest Acres, 902 F. Supp. 662, 671–72 & n.2 (D.S.C. 1995). In turn,

13

in the case of a viable excessive force claim under § 1983, Barfield's SCTCA battery claim against the KCSO also survives.[4]

### 1.

As with the illegal seizure and false imprisonment claims, we first determine whether the facts alleged, when viewed in favor of Barfield, show Threatt violated a constitutional right. The district court analyzed Barfield's allegations of excessive force and battery and found Barfield presented insufficient evidence to dispute the reasonableness of Threatt's actions. We disagree. Threatt and Barfield present wildly disparate accounts of the arrest, putting in dispute the material facts at issue regarding the necessity of force used in arresting Barfield. Thus, taking Barfield's account as true for purposes of summary judgment and the first prong of qualified immunity, Threatt, without provocation, hid behind a tree and "bulldogged" Barfield from behind when he stepped off the porch.[5]

---

[4] KCSO did not object to the magistrate judge's rejection of the sovereign immunity defense, and the district court found no error in the magistrate judge's reasoning. Moreover, KCSO did not argue sovereign immunity on appeal to this court. Thus, KCSO waived that defense on appeal. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 142 (1985); Wright v. Collins, 766 F.2d 841, 845 (4th Cir. 1985). In any case, we agree with the district court's rejection of KCSO's sovereign immunity defense.

[5] The district court reasoned that the conduct leading to Barfield's arrest—referring to evidence that Barfield "was yelling, cursing, and using alcohol"—justified the force Threatt used to restrain him. See J.A. 150–51. However, only Threatt's version of events presents such evidence. See id. To the

14

We cannot say that Threatt's actions were objectively reasonable in light of the circumstances presented. The first Graham factor, the severity of the suspected crime, weighs in favor of Barfield. Barfield was a misdemeanor suspect, believed to have been breaching the peace by yelling on his private property—a "nonviolent misdemeanor offense [that] was not of the type that would give an officer any reason to believe that [Barfield] was a potentially dangerous individual." Smith, 781 F.3d at 102; see also Parker v. Gerrish, 547 F.3d 1, 9 (1st Cir. 2008) (finding the first factor weighs in favor of the plaintiff, who was arrested for driving while intoxicated, because the offense "does not present a risk of danger to the arresting officer that is presented when an officer confronts a suspect engaged in an offense like robbery or assault").

The second and third Graham factors also favor Barfield. Drawing all permissible inferences in his favor, nothing in the record supports the conclusion that he posed either a safety or flight risk, or that he was actively resisting or evading arrest. Indeed, "[t]here never has been any suggestion that [Barfield] was armed or that [Threatt] suspected he might be,"

_____

extent the district court took Threatt's version of events as true in ruling on summary judgment, this was error. See Smith, 781 F.3d at 103 (noting that Supreme Court precedent instructs courts to draw inferences in favor of the plaintiff when the officer's testimony regarding his perceptions of the arrest is contradicted by other evidence in the record).

15

Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994), or that Barfield otherwise threatened the deputy, see Henry, 652 F.3d at 533. Although Barfield was walking in the direction of the police car when Threatt tackled him, that action, alone, does not present an immediate safety concern. See Deorle v. Rutherford, 272 f.3d 1272, 1282–83 (9th Cir. 2001) (finding suspect's walking on his own property in direction of police, even while holding a can or bottle, insufficient to justify force deployed). Moreover, Barfield's walking toward the police car implies the opposite of a flight risk or an attempt to evade arrest, particularly when Threatt had not announced himself or otherwise attempted to arrest Barfield before tackling him. Indeed, tackling Barfield was Threatt's first and only means of effecting the arrest. Finally, despite Barfield's lack of injury, Barfield and his wife's corroborating testimony supports his characterization of the arrest as violent.[6]

---

[6] The district court rejected Barfield's characterizations of Threatt's conduct as being "violent [in] nature," finding that Barfield "introduced no evidence indicating that the force Threatt used was anything other than 'a good-faith effort to maintain or restore discipline.'" J.A. 150 (citing Wilkins v. Gaddy, 559 U.S. 34, 40 (2010)). This standard, however, is applied when an excessive force claim is alleged under the Eighth Amendment. Although we have found that "[t]he extent of the plaintiff's injury is also a relevant consideration" under the Fourth Amendment to evaluate the reasonableness of the force used in effecting an arrest, Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003), injury is not a dispositive factor.

16

Because material facts are in dispute regarding the reasonableness of Threatt's use of force, and, if proven, the facts alleged show that Threatt violated Barfield's Fourth Amendment rights, the district court erred in finding no constitutional violation with regard to Barfield's § 1983 claim for excessive force and his SCTCA claim for battery.[7]

2.

Having determined that Barfield's allegations, if true, establish a Fourth Amendment violation, we turn to whether Barfield's rights were "clearly established" at the time of the violation. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Because "[q]ualified immunity shields an officer from suit when []he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances . . . confronted," we focus our inquiry on the body of law at the time of the police conduct to determine "whether the officer had fair notice that [the] conduct was unlawful." Brosseau v. Haugen, 543 U.S. 194, 197 (2004) (citing Saucier, 533 U.S. at 206). The clearly established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. (quoting Saucier,

---

[7] Because KCSO is not entitled to immunity, the SCTCA battery analysis ends with our conclusion that Barfield presented sufficient evidence to show a genuine dispute of material fact on that issue, and the grant of summary judgment in favor of KCSO on that claim was erroneous.

17

533 U.S. at 201). But "[w]e do not require a case directly on point" to find the requirement satisfied "so long as 'existing precedent [has] placed the statutory or constitutional question beyond debate.'" Smith, 781 F.3d at 100 (alteration in original) (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011)). Ultimately, our clearly established determination is based "on the simple fact [whether] the officer took a situation where there obviously was no need for the use of any significant force and yet took an unreasonably aggressive tack." Id. at 104.

At the time of Threatt's conduct, it was clearly established in this more "particularized" sense that he was violating Barfield's Fourth Amendment rights. Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Although there is not a case directly on all fours with the facts of this case, the law at the time of Threatt's conduct makes clear that in November 2011, a police officer's unprovoked tackling of a nonthreatening, nonresisting misdemeanor suspect to effect his arrest violates the Fourth Amendment. See Rowland, 41 F.3d at 172–74 (rejecting qualified immunity where officer, unprovoked, attacked nonfleeing, nondangerous misdemeanor suspect to subdue him); see also Smith, 781 F.3d at 104–06 (finding the same clearly established in 2006); accord Blankenhorn v. City of Orange, 485 F.3d 463, 481

18

(9th Cir. 2007) (finding it "clearly established" that tackling a "relatively calm," nonresistant misdemeanor suspect, without first attempting a less violent means of arrest, violates the suspect's Fourth Amendment rights); Goodson v. City of Corpus Christi, 202 F.3d 730, 733-34, 740 (5th Cir. 2000) (rejecting qualified immunity when officers tackled nonfleeing citizen); Landis v. Baker, 297 F. App'x 453, 464 (6th Cir. 2008) (finding it clearly established that "forcefully tackling and pinning down a suspect who was unarmed would constitute excessive force"). As in Rowland, Threatt "took a situation where there obviously was no need for the use of any significant force and yet took an unreasonably aggressive tack." Smith, 781 F.3d at 104. This objectively unreasonable application of force, combined with the weakness of the Graham factors, puts the "constitutional question beyond debate." Id. at 100 (quoting al-Kidd, 131 S. Ct. at 2083). As such, we have no trouble finding the law clearly established at the time of Barfield's arrest. The district court thus erred in granting summary judgment to Appellees on Barfield's § 1983 and SCTCA claims for excessive force and battery.

## IV.

For the reasons stated, the judgment of the district court is affirmed in part and reversed in part, and the case is

19

remanded for trial consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART,</u>
<u>AND REMANDED</u>